Adams et al. *v.* Patrick.

ABRAHAM ADAMS, SHEPHERD ADAMS AND ALBERT DAY *v.* JACOB PATRICK.

[IN CHANCERY.]

*Chancery.    Statute of Frauds.    Specific Performance.    Injunction of a suit at law.*

If the specific performance of a contract is sought to be enforced in chancery, and the defendant desire to avoid such performance, on the ground that the contract was by parol, and therefore within the statute of frauds, he must make this objection by plea or answer, otherwise he will be deemed to waive it.

A. made a parol agreement to allow B. to dig and forever maintain a ditch across A.'s land, for the purpose of carrying the water away from B.'s factory, on condition that the latter would build and maintain a substantial wall along the bank of the river on A.'s land; in reliance upon which agreement, B. lowered his water-wheel, dug the ditch and incurred other expenses. After B. had made use of the ditch for some time, A. obstructed it, and upon B.'s removing the obstruction, brought an action of trespass against him for so doing, upon which B. and his associates brought a bill in chancery against A., to compel a specific performance of his agreement, and to procure him to be enjoined from the farther prosecution of the action of trespass. *Held*, that there had been a sufficient part performance of the agreement to take it out of the Statute of Frauds.

*Held* also, that notwithstanding B. had not built so substantial a wall as was required by the agreement, still, as the damages to A., by reason of B.'s neglect in this respect had been computed by a master, the court would not, simply on account of the deficiency of the wall, refuse to decree a specific performance of A.'s agreement.

But, it appearing that the orators, since the bringing of their bill, had parted with all their interest in the factory, ditch, etc., and that the present owners thereof had acquired, by a new contract with the defendant, all the rights which the orators were seeking in this cause, the court refused to decree a specific performance of the defendant's original agreement with the orators, on the ground that such a decree would be useless and nugatory. But the court at the same time enjoined the defendant from the further prosecution of his suit in trespass against B. upon the latter's paying to A. the damages reported by the master, as incurred by A. by reason of B.'s neglect in building the wall.

APPEAL from the decree of the court of chancery. The bill was dated December 17, 1847, and set forth that on the 1st day of December, 1843, the orators, together with George S. Coffin and

Perley S. Coffin, were the owners of a certain woollen factory, with water privilege and other appurtenances; that the defendant owned a piece of land adjoining their factory; that the defendant agreed with the orators and the other owners of the factory, to give them the privilege of digging and forever maintaining a ditch on the southerly side of Black river, on which their factory was situated, through the defendant's land, for the purpose of carrying off the water from the wheel-pit of the factory, which the orators and their associates at that time, relying on the agreement of the defendant, lowered, so as to give them a greater water power; that the consideration of this agreement on the part of the defendant, was that the other parties thereto should build and forever maintain a substantial stone wall against the south bank of Black river, opposite to the defendant's shed and would also pay the defendant whatever damages he might sustain from the water in consequence of such ditch; that the orators and the other owners of the factory relying on this agreement of the defendant, dug a ditch across the defendant's land and built a substantial stone wall along the river opposite the defendant's shed in the manner contemplated by this agreement; that about the 1st of July, 1845, the defendant built a dam across said ditch, on his land, and thereby caused the water to set back and obstruct the operation of the factory; that after this the said George S. Coffin and Perley S. Coffin respectively sold out their interest in the factory and its appurtenances to the orators, who were, at the time of bringing the bill, the sole owners thereof; that after repeated applications by the orators to the defendant to remove the dam, created by him across the ditch, Abraham Adams, acting for himself and the other orators, removed said dam; that the defendant had brought an action of trespass against Abraham Adams for so doing, which was pending when the bill was brought.

The prayer of the bill was for a specific performance by the defendant, of the agreement above stated, in regard to the ditch across his land, and also for a perpetual injunction against any farther prosecution, by the defendant, of the trespass suit above referred to.

The defendant's answer denied the agreement as stated in the bill, but admitted that he made with the orators an agreement

as follows: that in consideration that they would throw open a passage-way, twelve feet wide, next adjoining the west line of the defendant's homestead, from the street to Black river, and would remove two barns, then standing near the defendant's dwelling house, away from the orator's premises and the defendant's buildings, they might dig a ditch across the defendant's land for the purpose of carrying away the water from their wheel-pit, provided they would so dig and construct the ditch as not to injure the land of the defendant or the trees growing upon the bank of the river thereon; and also provided they would build a substantial stone wall under the north side of the defendant's shed. The answer further stated that the orators had not thrown open the pass-way nor removed the barns as they had agreed to do; and that they had, in digging the ditch, destroyed several trees growing upon the bank of the river on the defendant's land; that they did not build such a wall as was provided for by the agreement, in consequence of which neglect on their part, the defendant's shed and a portion of the river's bank had been washed and carried away. The defendant admitted in his answer that he permitted the orators to dig the ditch in question, because he relied upon their carrying out their part of the agreement, but averred that as soon as they failed to fulfill the agreement on their part, he forbade any further work by them upon the ditch.

The orators traversed the answer, and the case was referred by the court to a master in chancery, to ascertain the amount of damage which the defendant had suffered on account of the digging of the ditch mentioned in the bill, and the master reported that the amount of such damage was thirty-seven dollars and seventeen cents.

Voluminous testimony was also taken as to the merits of the case, the material portions of which are sufficiently stated in the opinion of the court.

It appeared that since the bringing of the bill the orators had entirely parted with their interest in the factory in question and its appurtenances, and when the decree was rendered had no interest therein.

The court of chancery decreed that on payment by the orators to the defendant, of the amount of damages reported by the mas-

ter, as above stated, the defendant should execute and deliver to the orators a good and sufficient lease by way of quitclaim, conveying to the orators the right and privilege of supporting the raceway or ditch named in the bill, so long as they, their heirs or assigns, should keep a factory there and should maintain a substantial wall opposite the defendant's shed referred to in the bill, and also that the defendant be perpetually enjoined from further prosecuting the suit in trespass against Abraham Adams above desscribed. From this decree the defendant appealed.

*J. F. Dean* and *Converse & French,* for the orators.

*Sewall Fullam,* for the defendant.

The opinion of the court was delivered by

BENNETT, J.   The object of the bill is to compel a specific performance of a contract, and also to obtain a perpetual injunction against a suit at law, instituted by the defendant against Abraham Adams. It may be remarked, that the title of the Coffins in the factory, etc., passed to the orators before the suit was brought. The answer of the defendant admits that a contract was made, giving the right to dig and maintain the ditch, but sets it up somewhat variant from the contract set up in the bill, to which reference may be had, as well as to the answer.

In view of all the testimony in the case, which I will not take time to recapitulate, we think it does establish the fact that the owners of the mill were to have the right to dig and maintain the ditch, *upon the condition that they would build a good and substantial wall, so as to secure the defendant from damage from the water.* We apprehend that what was said about removing the barns and opening the pass-way was a gratuitous conversation, and did not enter into and become a part of the condition, upon which it was agreed to give the right to dig and maintain the ditch. This is the express testimony of George S. Coffin, who made the contract, and he is confirmed in this by quite a number of witnesses.

It is argued by the defendant's counsel that, as this contract was not in writing, the case is not a proper one in which to decree a specific performance. But to that it may be answered, the defendant has not insisted upon the statute in pleading, or by his answer.

We understand this is necessary, otherwise the statute is waived. A contract is not *illegal* because it is within the statute of frauds, but it is only incapable of being enforced against the defendant without writing, and he may waive the immunity, if he sees fit to do it. Brown on Statutes 480.

The case of *Cooth* v. *Jackson*, 6 Vesey 17, is not opposed to this position. In that case, though the statute was pleaded, yet it was coupled with another defence, and the chancellor said he could not allow the statute to be *so* pleaded, that is, to be coupled with another defence. Though he adds " there was no purpose in pleading it, as the defendant might have the advantage of it at the hearing;" yet there is no intimation by the Lord Chancellor that it can be done at the hearing, unless first insisted upon in the answer. No doubt the statute may also be specially pleaded, and the only objection in the case in 6 Vesey was to its being coupled with another defence in the same plea.

But I apprehend there has been such a part performance of the contract as to take it out of the statute. The owners of the mill went on under the contract, dug the ditch, and built the wall and sunk the wheel-pit, and lowered their wheel, at an expense of some eight hundred dollars. To permit the defendant, in such a case, to repudiate his contract would be to make the statute an engine of fraud, instead of a statute for the prevention of fraud. See Brown on Statute of Fraud 437 ; Angell on Water Courses 362, section 322.

It is also insisted that the factory owners did not build such a wall as their contract required, and, not having fulfilled on their part, they have no right to ask for a specific performance on the other side. We think, from the testimony, there was a failure to build the wall in all respects as it should have been built, yet we can not infer from the evidence any such gross negligence as could indicate any intention in the factory owners not to comply *fully* with the true spirit of their contract, and we have no doubt they acted in good faith in building the wall, and believed it would prove sufficient to answer all purposes for which it was designed. The doctrine of a court of equity is never to work a forfeiture of a contract where compensation can be made ; and this is clearly a case where compensation for damages, resulting from a want of a

Adams et al. *v.* Patrick.

strict compliance with the contract on the part of the factory owners, may be made. These damages the master has assessed, and we think the defendant should be satisfied with them. It would be highly inequitable that the defendant should have a forfeiture of the contract, simply because it turned out that the wall did not fully answer the expectation of the factory owners.

But a court of equity has a *discretion* in decreeing a specific performance of a contract, and will not do it where it will be *useless and nugatory* to the complainants to have it done. In this case the orators have ceased to have an interest in the subject matter of this controversy. In 1843 this factory became the sole property of Abraham and Shepherd Adams; and in February, 1851, they conveyed the property to the Black River Bank, and in July of the same year, the bank conveyed it to George S. Coffin, who was one of the owners of the factory when the contract, upon which this bill is predicated, was made with the defendant. It is agreed that Coffin, under his conveyance from the bank, continued the owner of the entire property down to 1856; and in 1852, while sole owner, he entered into a new agreement with the defendant, by which he secured the right to dig a ditch for the race-way so as to lower his wheel, by keeping up a good and sufficient wall, and in August, 1852, the defendant, by his deed, conveyed to Coffin and his heirs and assigns, all the rights that were ever claimed to have arisen against the defendant by virtue of the contract upon which this bill is predicated. A decree for specific performance can not give Coffin any greater rights than what he has under his deed, and would indeed be a *nugatory* act.

We think the action of trespass in favor of the defendant against Abraham Adams, should be perpetually enjoined. Though we do not decree a specific performance of the contract, for the reason assigned; yet the orators, in equity, had a right to enter upon the lands of the defendant for all the purposes secured to them by the terms of that contract, by implication or otherwise. Though the defendant, in that action, might not be able to defend it at law, yet in equity he has an undoubted defence, and the further prosecution of it should be enjoined.

The result is, the decree of the chancellor is reversed, and the cause is remanded to the court of chancery with directions that the

chancellor pass a decree perpetually enjoining a further prosecution of the suit at law, upon the orators paying to the defendant the damages reported by the master, and legal interest on the same by a short day, to be fixed by the court of chancery, and that neither party be allowed costs.