# A. ALLYN OLMSTEAD v. GEORGE N. ABBOTT.*
## AND CROSS CAUSE.

### Chancery. Parol License. Amendment.

1. When one has expended large sums upon the strength of a parol license to flow lands, that license becomes, in equity, irrevocable.

2. In February, 1879, defendant told orator that if he would build a mill and dam on a certain site, he would permit orator to flow so much of his, defendant's, land as might be necessary to the operation of the mill. Orator notified defendant that he would accept this proposition, and in reliance thereon bought the site and began the erection of his mill. In August, 1879, having completed his mill, the orator was about to commence his dam, when defendant insisted that orator should not flow his land without compensation. Thereupon it was agreed that orator might erect and maintain a dam five feet high, and that the orator should pay the defendant whatever sum as damages three arbitrators might award. In making this agreement the orator waived no previous rights. Upon the strength of this second agreement the orator completed his dam, and began to operate the mill. The arbitrators were called out, but the defendant refused to allow them to award damages, and insisted that orator should not flow his land. Thereupon an agreement was made, June 11, 1880, by which the orator agreed to pay the defendant $25 for the privilege of flowing his land from May 15, 1880, to May 15, 1881. All the previous negotiations between the parties had been by parol, but this agreement was in writing. Orator made it as a result of his necessities, and under protest, and the master found it was intended as a temporary arrangement. *Held*, that the agreements of February and August taken together amounted to a license to the orator to flow the land of the defendant to the extent of maintaining a dam five feet high, upon the payment of a reasonable compensation, and that the defendant could not revoke this license, although in parol, after the orator had expended large sums of money upon the strength of it.

3. If the first verbal agreement in February was too indefinite to permit a specific performance, this defect was cured by the subsequent agreement in August.

4. The previous verbal agreements were not merged in the written agreement of June 11, 1880.

5. The bill alleged that the orator expended his money relying on the agreement of the defendant. This is tantamount to, and renders unnecessary the allegation that he accepted the proposition of the defendant.

*Heard General Term, 1887.

6. The bill alleged that the orator was to have the right of flowage to such extent as might be necessary to the operation of the mill. The master found that he was to have the right to maintain a dam five feet high. *Held,* that the orator could not prevail upon his bill as then framed, inasmuch as the proof did not support its allegations, but that he should be permitted to amend upon terms.

This was a bill in chancery brought by the orator to compel the defendant to carry out the terms of a parol license to flow the lands of the defendant. The defendant made answer, and also filed a cross bill, praying among other things, that the orator might be perpetually enjoined from maintaining the dam which he had erected at such a height as to flow the lands of the defendant. The case was referred to a master and was heard upon the pleadings and the report of the master at the December Term, 1886. Walker, Chancellor, decreed that upon the payment of $105 by the orator to the defendant as damages the defendant execute to the orator a deed of the right to flow so much of his land as would be flowed by the maintenance of a dam five feet high. The defendant appeals.

From the master's report it appeared that in 1878 the defendant on several occasions represented to the orator that if he would erect a mill upon a certain site, he would permit the orator to flow so much of his, defendant's, land as might be flowed by the maintenance of a dam sufficient to run said mill; that the orator finally in February, 1879, accepted this proposition, notified the defendant to this effect, and in reliance thereon purchased the necessary land and began the construction of his mill. In August, 1879, the orator having substantially completed his mill building, was about to commence his dam, when the defendant objected to the flowing of his land without compensation. Thereupon the orator, without waiving any of his rights in the premises, consented to submit the matter of compensation to arbitration, and it was finally agreed that the orator might erect a dam five feet high, and that it should be left to three arbitrators to say what sum the orator should pay the defendant by way of damages for all time. The orator then went on and completed his dam. The arbitrators were named and

called out, but defendant would not allow them to make an award. After the orator had begun to operate his mill in May, 1880, the defendant refused to permit him to flow his land, and an agreement was made by which the orator was to pay $25 for the privilege of maintaining his dam from May 15th, 1880, to May 15th, 1881. All the previous agreements between the parties had rested in parol. This one was reduced to writing under date of June 11, 1880.

The master reported that this arrangement was a temporary one, that the orator made it as the result of his necessities, protesting that it was an unconscionable one, and without waiving any rights he might have by virtue of what had already passed between them.

The master reported that the value of the land of the defendant which would be flowed by the maintenance of a dam five feet high was $105.

*C. B. Leslie* and *Smith & Sloane*, for the orator.

Equity will enforce a parol agreement; first, where there has been a part performance, especially when the parties cannot be placed in *statu quo ;* second, when to declare the agreement void would work a fraud, and make the statute of frauds an instrument of fraud. 1 Story Eq. Jur., Red. Ed. ss. 330, 759, 761 and 763 ; 2 *id.*, s. 1522 ; *Meach* v. *Stone et al.*, 1 D. Chip. 189 ; *Hall* v. *Chaffie*, 13 Vt. 150, note p. 157 ; *Griffith* v. *Abbott*, 56 Vt. 356 ; *Crocker* v. *Higgins*, 7 Con. 342 ; Br. St. Fr., 3d Ed. 438 ; Ang. Wat., 4th Ed. ss. 318, 319, 320, 322, 323 ; 3 Barb. 407 ; *Maling* v. *Brown*, 4 N. Y. 403 ; *Evarts* v. *Agrum*, 4 Wis. 343 ; *Johnson* v. *Hubbell*, 2 Stock. 332 ; *Lobdell* v. *Lobdell*, 36 N. Y. 327 ; *Stark* v. *Wilder*, 36 Vt. 752 ; *Holmes* v. *Caden*, 57 Vt. 111 ; Fry Sp. Per., s. 555 and note 1, ss. 556 and 569, note 1 ; Seat. Dec., Heard's Ed., note p. 651 ; 1 L. C. Eq., p. 565, note ; 1 Hare & Wal. L. C., p. 561 ; *Laird* v. *Birkenhead Ry. Co.*, Jones, 500 ; L. C., 1 Hare & Wall., p. 562 note, and 569 note ; *Tilton* v. *Tilton*, 9 N. H. 386, 390 ; *Eaton* v. *Whitcher*, 18 Conn. 222, 229.

The parol license was sufficiently definite as to its extent. *Kemp* v. *South Eastern Ry. Co.*, L. R. 7 Ch. App. 364; *Saunderson* v. *Cockermouth & Workington Ry. Co.*, 11 Bevan 497; Seat. Dec., Heard's Ed., 654; *Storer* v. *Great Western Railway*, 2 Y. & C. 48; *Rumble* v. *Haygate*, 18 W. R. 749; *Jenkins* v. *Green*, 27 Bevan, 437; 46 Ill. 297; L. C. Eq., p. 565 and note, and p. 753; *Rhodes* v. *Rhodes*, 3 Sanf. 279, 281; 14 Johns. 15, 17.

The same certainly is not required where there is an element of fraud. Fry Sp. Per., s. 367 and citing; *Chattock* v. *Muller*, 8 Ch. D. 177, *supra*.

The orator lost nothing by his agreement to arbitrate. He had already incurred the expense and had his right of action. The agreement was obtained by taking an undue advantage of the circumstances of the orator. 1 Chitty on Contracts, 11th Am. Ed., 273; 1 Story Eq. Jur., Red. Ed., s. 239.

The writing of June 11, 1880, does not vary the case. It was a temporary arrangement, entered into by the orator, under protest.

*Roswell Farnham* and *W. S. Ladd*, for the defendant.

The written contract of June 11, 1880, was the consummation of the previous oral negotiations and arrangements and the parties were bound by its terms. *Kain* v. *Old*, 2 B. & C. 634; *Harnor* v. *Groves*, 29 E. L. & E. 223; *Hokes et al.* v. *Hotchkiss*, 23 Vt. 235; *Dixon* v. *Blandin*, 58 Vt. 692; *Morse* v. *Low*, 44 Vt. 561; 1 Greenl. Ev. s. 275; Par. Con. 548 (5th Ed.), and cases there cited; *Adams* v. *Smilie*, 50 Vt. 7; Br. Fr., s. 409 a; *Steubben* v. *Granger*, 6 West. Rep. 106; *Davy* v. *Morgan*, 56 Barb. 225; *Smith* v. *Henley*, 1 Phil. 391, (19 Eng. Ch. Rep. 391); *Mann* v. *Independent School Dist. of Le Grand*, 52 Ia. 130; *Ewald* v. *Lyons*, 29 Cal. 550; *Savercool* v. *Farwell*, 17 Mich. 308, 319; *Adair* v. *Adair*, 5 Mich. 204; *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 281.

Olmstead *v.* Abbott.

The action of the orator in paying rent and thus recognizing the right of the defendant did away with the effect of any parol license. *Rankin* v. *Simpson*, 19 Pa. St. 471; *Zimmerman* v. *Wengart*, 31 Pa. St. 401; *Porter* v. *Vaughn and Thrall*, 26 Vt. 628; *Bryan* v. *Reed*, 1 Dev. & Batt. 78.

The orator did not enter into these agreements to pay rent under any sort of duress. *Beckwith* v. *Frisbie*, 32 Vt. 559; *Brownell* v. *Tallcott*, 47 Vt. 243; *Brown* v. *Tyler*, 16 Vt. 22; *Sillaman et als., apts.* v. *United States*, 11 Otto 465; *William Mason, apt.* v. *United States*, 17 Wall. 67; *S. C. Hall Lumber Co.* v. *Gustin et als.*, 54 Mich. 631; *Goebel et al.* v. *Linn*, 47 Mich. 589.

Nor will his protest avail him. *Savage Ex'x* v. *United States*, 2 Otto 382; *Emmons* v. *Scudder*, 115 Mass. 372; *Cook et als.* v. *City of Boston*, 91 Mass. 393.

The orator has unnecessarily delayed bringing this suit for a specific performance. 1 Russ. & Mylne (5 Eng. Ch.) 236; *Colby* v. *Gladstone*, 34 Beav. 418; Pom. Spec. Perf. s. 425; *Heaphy* v. *Hill*, 2 S. & S. 29; Story's Eq. Jur., s. 771; *Rich* v. *Gale*, 24 L. T., N. S. 745; *White* v. *Bennett*, 7 Rich (S. C.) 260; 3 L. C. in Eq., p. 62 (*447); *Southcomb* v. *Bishop of Exeter*, 6 Hare 225; 31 Eng. Chy. 225; *McDermid* v. *McGregor*, 21 Minn. 111; *Porter* v. *Vaughn*, 26 Vt. 624; *Banks* v. *Burnham*, 61 Mo. 76; *Mills* v. *Haywood*, L. R. 6 Ch. Div. 202; *Eads* v. *Williams*, 31 E. L. & E. 210; 53 Eng. Ch. 674; *Haughwout et al.* v. *Murphy*, 21 N. J. Eq., 118; *Lawrence* v. *Lawrence*, 21 N. J. Eq. 317; *Merritt* v. *Brown*, 21 N. J. Eq. 401.

The findings of the master do not support the orator's bill. Hence he cannot recover. *Barrett* v. *Sargent*, 18 Vt. 372; *Piatt* v. *Vatter*, 9 Pet. 405; *Tilton* v. *Tilton*, 9 N. H. 385; *Bellows* v. *Stone*, 14 N. H. 175; *Crabb* v. *Thomas*, 25 Ala. 212; *Kidd* v. *Manley*, 28 Miss. 156; Wat. Sp. Per., s. 90; *Daniel* v. *Collins*, 57 Ala. 625; *Richardson* v. *Goodwin*, 6 Jones (N. C.) 229.

Olmstead *v.* Abbott.

The allegations in the bill and findings of the master are not sufficiently definite to afford the basis for a specific performance. Wat. Sp. Per. s. 261, 263; *Phillips* v. *Thompson*, 1 Johns. Ch. 131, 149; Story's Eq. Jur. s. 769; *Vigers* v. *Pike*, 8 Cl. & Fin, 562; *Tyson* v. *Watts*, 1 Md. Ch. 15; *Brainard* v. *Holsaph*, 4 Green (Ia), 485; Br. Fr., s. 452; *Williams et al.* v. *Morris*, 5 Otto 444, 452.

This license was a revocable one. Having been revoked, the orator cannot complain. 1 Wash. Real Prop. (4th Ed.) 398 margin; 400 margin, s. 10 a; 400 margin; 401 and 402 margin; God. Eas. pp. 460, 472 and 473; *Hewlins* v. *Shippam*, 5 B. & C. 221; *Sampson* v. *Burnside*, 13 N. H. 264; *Fentiman* v. *Smith*, 4 East 107; *Wood* v. *Leadbitter*, 13 M. & W. 845; *Stevens* v. *Stevens*, 11 Met. 251; *Mumford* v. *Whitney*, 15 Wend. 380; *Hall* v. *Chaffee*, 13 Vt. 157; *Houston* v. *Laffee*, 46 N. H. 505.

The opinion of the court was delivered by

TAFT, J. The orator alleges that in February, 1879, the defendant agreed that if he, the orator, would buy the Smith mill site, erect a shop and build a dam thereon, he would give the orator the right to flow his, the defendant's, land situate on Hall's brook above the site, if it was necessary to do so in order to give sufficient head and power to propel the orator's machinery; that relying upon said agreement he did buy the site and erect a mill in the summer of 1879; that afterwards, in August of that year, as he was about to build the dam, the defendant claimed compensation of the orator for the right of flowage, and the orator agreed to pay it and an agreement was entered into as to the manner of ascertaining the amount to be paid, by submission to parties then agreed upon, the details of which it is unnecessary to state; that the defendant refused to go on with the submission and no award was made; and further alleging that a dam with flash boards six feet in height was necessary to give the requisite flowage. Such in substance are the main

Olmstead *v.* Abbott.

allegations of the bill. The report of the master in its findings of facts sustains the orator, in his claims as to the arrangement originally made between him and the defendant, and shows that prior to the arrangement between them in August, 1879, the orator, relying upon the agreement of the defendant, had purchased the site and erected a shop at a cost of about one thousand dollars ; that upon claim being made by the defendant that the orator should pay for the flowage right, the orator did agree to pay the damages caused by a dam five feet in height, and it was then agreed that he should have the right to flow the defendant's land by a dam of that height; and that the damages so caused should be ascertained in the manner alleged in the bill ; that the orator, relying upon the arrangement thus entered into, built the dam at an expense of two thousand dollars and placed machinery in the shop and had thus invested all his property in the enterprise. No objection had been made by the defendant to the flowing of his land by the orator prior to the completion of the dam and shop. At the time of the negotiation by the parties in August, 1879, there was no attempt by the defendant to revoke the license theretofore given the orator to flow the land. The controversy was whether the flowage should be paid for, and resulted in the modification of the original agreement in two respects, *viz.:* the extent to which the land should be flowed, and that it should be paid for, and in connection with the latter a provision for ascertaining the amount to be paid. Under the agreements as above stated the orator bought the Smith mill site, expended several thousand dollars upon the dam and buildings, and was ready to operate his manufactory, when the submission to arbitrators of the matter of damages having failed, the defendant revoked the license he had given, or sold, to flow his land, and to the claim of the orator that the agreement in respect thereto should be specially enforced insists that it was within the statute of frauds, the subject thereof being an interest in lands. We think that at the completion of the dam it was too late for the defendant to revoke the license he had given the

Olmstead v. Abbott.

orator. Upon the faith of it the latter had purchased real estate, had improved it in connection with his other lands, had built upon it a shop and dam at great expense, all of which will be substantially lost to him, unless the agreement is enforced. A refusal to carry out. the agreement though resting in parol is considered a fraud of that kind which gives a court of equity jurisdiction and power to decree specific performance as the only way in which the orator can have adequate redress. It is a fraud practiced under pretence of an agreement, but there is such a part performance, that the case is taken out of the statute. *Meach* v. *Perry*, 1 D. C. 182; *Hall* v. *Chaffee*, 13 Vt. 150 note; *Adams* v. *Patrick*, 30 Vt. 516; *Griffith* v. *Abbott*, 56 Vt. 356; *Holmes* v. *Oaden*, 57 Vt. 111.

It is said by the defendant that the original license was given in such indefinite terms, that is; the orator might flow the defendant's land if it was necessary to do so in order to give sufficient head and power to propel the orator's machinery, that a court of equity would not decree specific performance. Conceding this to be the true rule where the terms of a license are indefinite, the agreement of the parties in August, 1879, rendered certain what was before uncertain, for at that time it was agreed that the flowage should be by a dam five feet in height.

The defendant claims that the verbal agreements made in 1879 were merged in the written contract of 11 June, 1880. If it were true, it would perhaps bar a decree for the orator. The parties had failed in their attempt to ascertain by arbitration the amount of damages to be paid by the orator, for flowing the defendant's land; it was then too late for the defendant to revoke his license; the written contract was entered into as a temporary arrangement of the difficulty, and by it the orator did not lose his rights which he acquired under the parol agreement to flow the defendant's land. The contract affected and had reference only to the damages resulting from the flowing, not the right to flow. The orator is entitled to relief irrespective of the questions of duress, and payment under protest, and these

questions are not considered by us. Nor do we deem him guilty of unreasonable delay in bringing suit for a specific performance of the contract, under the circumstances detailed in the master's report. All reasonable means should be taken to avoid litigation such as this and temporary arrangements entered into in such cases often result in becoming permanent.

The argument that the orator has not performed enough under the contract to entitle him to a decree merits no consideration. It would be difficult to find a stronger case in this respect.

It is objected by the defendant that there is no allegation in the bill that the orator accepted the proposition of the defendant, and therefore was under no obligation to him, to go on and erect the mill and dam, but the orator does allege that relying upon the promises and agreements of the defendant, not that he accepted the proposition and agreed to erect the mill and dam, but that he actually did build the dam and mill. We think an allegation that he accepted the defendant's proposition and agreed to build the dam and mill was rendered unnecessary by the one that, relying upon the defendant's promises, he did build them. The report shows an absolute acceptance by the orator of the defendant's proposition, and we should have no hesitation in allowing an amendment of the bill in that respect did we deem it necessary, but an allegation that he executed the contract implies an acceptance.

The orator alleges that he was to have such right of flowage as was necessary to give sufficient head and power to propel his machinery. It is claimed that the allegation is not sustained by the facts found by the master. The report shows that at the time of the negotiations in August, 1879, the extent of the flowage permitted by the original license was modified by an agreement that the orator should have the right to flow the defendant's land by a dam five feet in height. The bill therefore alleges one right, and the report shows another.

The orator must recover, if at all, upon the case made by the bill; neither the answer, special prayer for relief, nor the proofs

(19)

can aid him to recover upon a case nòt made by the bill. *Thomas v. Warner,* 15 Vt. 110; *Barrett* v. *Sargeant,* 18 Vt. 365. Upon the bill as drawn the orator cannot recover, but the facts found present a case entitling him to relief, and it can be granted him, if the bill is amended by adding an allegation of that part of the contract in respect to the right of flowage by a dam five feet high, as stated in the master's report. As to the right and practice of the court to permit amendments under the circumstances as shown in this case, see the late cases of *Harrington* v. *Bacon,* 57 Vt. 644; *Dwinnell* v. *Bliss,* 58 Vt. 353; *Kopper* v. *Dyer,* 59 Vt. 477; *Still* v. *Buzzell,* 60 Vt. 478.

The orator cannot prevail except upon an amendment to the bill as above indicated. The amendment should be permitted upon such terms as the Court of Chancery deems just and reasonable.

*The decree is reversed and cause remanded with mandate in accordance with above opinion.*