JOHN BIRD *et al. vs.* HALSEY H. MUNROE.

Knox, 1876.—May 29, 1877.

*Frauds,—statute of.*

Where the defendant verbally contracted with the plaintiffs for the purchase of a quantity of ice to be afterwards delivered and, after the breach of the contract by the defendant, the parties put the contract into writing, in the terms as before agreed upon verbally, antedating it as an original contract of the date of the verbal contract first made; in an action upon the contract commenced after, but declaring upon a breach which occurred before the writing was made, the writing is sufficient evidence of the prior verbal contract to satisfy the statute of frauds.

In such case, in view of the statute of frauds, the writing is not to be regarded as constituting the contract itself, but as merely the necessary evidence by which the contract may be proved.

The written evidence of a contract, necessary to satisfy the statute of frauds, must be in existence at the time of action brought on such contract.

Parol evidence is admissible, to show that the date of the writing was not an erroneous, but an intentional one, and that the parties intended thereby to create written evidence of the unwritten contract before made.

ON REPORT.

ASSUMPSIT, declaring on a contract substantially as stated in the following writing signed by the parties, and read in evidence by the plaintiffs.

"Rockland, March 2, 1874.

Memorandum contract by and between H. H. Munroe, of Thomaston, of the first part, and John Bird & Co., of Rockland, of the second part. The party of the first part agrees to pay the party of the second part four dollars per ton gross (2,240 lbs.) for five thousand tons of ice, weighed on board, price to include ice and freight to New York. The said party of the second part, agrees to deliver said ice on following conditions : Shipments to begin immediately, and to continue until full amount is shipped, cash to be paid on delivery of each cargo. Vessels to be discharged with despatch ; demurrage, if any, to be paid by party of first part, and no commissions to be paid on sales.

H. H. Munroe.<br>John Bird & Co.

Attest : Edmund A. Smith."

The declaration averred a breach of the contract by the defendant, in ordering a stoppage of shipments after one-half of the quantity contracted for had been shipped; and the plaintiffs claimed for extra expenses by reason thereof itemized in the following account annexed to the writ:

April 7, 1874.   To expense housing 2500 tons ice @ 25c.   $625.00
 "   "   breaking out & loading same,   625.00
 "   "   building houses for same,   600.00
 " expense in hauling same,   250.00
 " shrinkage and waste, (500 tons)   375.00
 " expenses at New York and telegrams,   125.00

$2600.00

The defendant pleaded the general issue with a brief statement, "that the said supposed contract set forth and declared upon in the plaintiffs' writ, as having been made between the plaintiffs and defendant, on the said 2d day of March, A. D. 1874, was not in writing, nor was there any written memorandum thereof ever made by either of the parties to this action, or by their agents, nor was there ever any delivery of the said ice, or any part thereof by the plaintiffs to defendant, nor any acceptance or reception of the same or any part thereof by the defendant; nor did the defendant ever pay to the plaintiffs anything in earnest to bind the bargain, or in part payment for said ice, and that said contract, if any such contract was ever made, was void by force of the statute of frauds.

And that the said supposed contract in the declaration set forth, if any such was ever legally made, was on the 24th day of March, 1874, abandoned and canceled by the mutual consent of the parties, and all breaches thereof waived and satisfied, by the said cancellation and abandonment, and that the plaintiffs did not deliver the said ice to the defendant, but sold and delivered it to the Knickerbocker Ice Co., of New York, and received payment therefor, from said Ice Co."

The evidence tended to show that after one-half of the ice had been shipped, the defendant ordered further shipments on his account to cease; that none of the ice was in fact received by him; that March 24, 1874, the parties met in New York, and

then and there reduced to writing, the memorandum in evidence dated March 2, 1874; that the plaintiffs contracted on the same day to sell all the ice to the Knickerbocker Ice Co., the twenty-five hundred tons afloat at $4.00 per ton, and the twenty-five hundred tons in house at $4.25, including freights, the twenty-five cents per ton added, to be paid to S. H. Allen.

On this contract was the following indorsement signed by the defendant and witnessed :

"It is understood that the within five thousand tons (5000) of ice is the same that was contracted for on March 2, 1874, with H. H. Munroe, and I, H. H. Munroe, hereby consent to the assignment of the same to the Knickerbocker Ice Company.

New York, March 24, 1874."

After the foregoing and other evidence, which in the opinion sufficiently appears, was introduced, the action was made law on report, to stand for trial if maintainable upon so much of the evidence as was legally admissible, otherwise the plaintiffs to be nonsuit.

*A. S. Rice & O. G. Hall*, for the plaintiffs.

*A. P. Gould & J. E. Moore*, for the defendant, contended that the allegation based upon the written contract was not supported by proof; that the evidence of the verbal contract, such as it was, even if legally admissible, did not support the declaration, and that it was not legally admissible, because of the statute of frauds; that the memorandum in evidence was a written contract in itself, and not intended as a memorandum of a previous verbal contract; that a verbal offer subsequently reduced to writing in the form of a contract, and signed by the parties, or even by the party making it could not be treated as a memorandum of a verbal offer or agreement; *Washington Ice Co.* v. *Webster*, 62 Maine, 341; that the verbal contract, if any existed, covered only one or two of the many elements of the written contract; that the contract dated March 2, and written, executed and delivered March 24, could have no validity before the latter date; that the written contract took its force and effect from the day of its execution and delivery, and not from the day of its date; *Hall* v. *Cazenove*, 4 East, 477; *Joseph* v. *Bigelow*, 4 Cush. 82; *Jackson* v.

*Shoonmaker,* 2 Johns. 230; that if the instrument had no validity as a sale prior to March 24, it had validity for no purpose prior to that time; *Egery* v. *Woodard,* 56 Maine, 45.

PETERS, J. On March 2, 1874, at Rockland, in this state, the defendant contracted verbally with the plaintiffs for the purchase of a quantity of ice, to be delivered, (by immediate shipments,) to the defendant in New York. On March 10, 1874, or thereabouts, the defendant, by his want of readiness to receive a portion of the ice as he had agreed to, temporarily prevented the plaintiffs from performing the contract on their part according to the preparations made by them for the purpose. On March 24, 1874, the parties, then in New York, put their previous verbal contract into writing, ante-dating it as an original contract made at Rockland on March 2, 1874. On the same day, (March 24,) by consent of the defendant, the plaintiffs sold the same ice to another party, reserving their claim against the defendant for the damages sustained by them by the breach of the contract by the defendant on March 10th or about that time. This action was commenced on April 11, 1874, counting on the contract as made on March 2, and declaring for damages sustained by the breach of contract on March 10, or thereabouts and prior to March 24, 1874. Several objections are set up against the plaintiffs' right to recover.

The first objection is, that in some respects the allegations in the writ and the written proof do not concur. But we pass this point, as any imperfection in the writ may, either with or without terms, be corrected by amendment hereafter.

Then it is claimed for the defendant that, as matter of fact, the parties intended to make a new and original contract as of March 24, by their writing made on that day and ante-dated March 2, and that it was not their purpose thereby to give expression and efficacy to any unwritten contract made by them before that time. But we think a jury would be well warranted in coming to a different conclusion. Undoubtedly there are circumstances tending to throw some doubt upon the idea that both parties understood that a contract was fully entered into on March 2, 1874, but that doubt is much more than overcome when all the written and oral evidence is considered together. We think the writing made on the

24th March, with the explanations as to its origin, is to be considered precisely as if the parties on that day had signed a paper dated of that date, certifying and admitting that they had on the 2d day of March made a verbal contract and stating in exact written terms just what such verbal contract was. Parol evidence is proper to show the situation of the parties and the circumstances under which the contract was made. It explains but does not alter the terms of the contract. The defendant himself invokes it to show that, according to his view, the paper bears an erroneous date. Such evidence merely discloses in this case such facts as are part of the *res gestœ.* Benjamin on Sales, § 213. *Stoops* v. *Smith,* 100 Mass., 63, 66 ; and cases there cited.

Then, the defendant next contends that, even if the writing signed by the parties was intended by them to operate retroactively as of the first named date, as a matter of law, it cannot be permitted to have that effect and meet the requirements of the statute of frauds. The position of the defendant is, that all which took place between the parties before the 24th of March was of the nature of negotiation and proposition only ; and that there was no valid contract, such as is called for by the statute of frauds, before that day ; and that the action is not maintainable, because the breach of contract is alleged to have occurred before that time. The plaintiffs, on the other hand, contend that the real contract was made verbally on the 2d of March, and that the written instrument is sufficient proof to make the verbal contract a valid one as of that date, (March 2,) although the written proof was not made out until twenty-two days after that time. Was the valid contract, therefore, made on March 2d or March the 24th ? The point raised is, whether, in view of the statute of frauds, the writing in this case shall be considered as constituting the contract itself or at any rate any substantial portion of it, or whether it may be regarded as merely the necessary legal evidence by means of which the prior unwritten contract may be proved. In other words, is the writing the contract, or only evidence of it ; we incline to the latter view.

The peculiar wording of the statute presents a strong argument for such a determination. The section reads : "No contract for

the sale of any goods, wares, or merchandise, for thirty dollars or more, shall be valid, unless the purchaser accepts and receives part of the goods, or gives something in earnest to bind the bargain, or in part payment thereof, or some note or memorandum thereof is made and signed by the party to be charged thereby, or his agent." In the first place, the statute does not go to all contracts of sale, but only to those where the price is over a certain sum. Then, the requirement of the statute is in the alternative. The contract need not be evidenced by writing at all, provided "the purchaser accepts and receives a part of the goods, or gives something in earnest to bind the bargain or in part payment thereof." If any one of these circumstances will as effectually perfect the sale as a writing would, it is not easily seen how the writing can actually constitute the contract, merely because a writing happens to exist. It could not with any correctness be said, that anything given in earnest to bind a bargain was a substantial part of the bargain itself, or anything more than a particular mode of proof. Then, it is not the contract that is required to be in writing, but only "some note or memorandum thereof." This language supposes that the verbal bargain may be first made, and a memorandum of it given afterwards. It also implies that no set and formal agreement is called for. Chancellor Kent says "the instrument is liberally construed without regard to forms." The briefest possible forms of a bargain have been deemed sufficient in many cases. Certain important elements of a completed contract may be omitted altogether. For instance, in this state, the consideration for the promise is not required to be expressed in writing. *Gillighan* v. *Boardman*, 29 Maine, 79. Again, it is provided that the note or memorandum is sufficient, if signed only by the person sought to be charged. One party may be held thereby and the other not be. There may be a mutuality of contract but not of evidence or of remedy. Still, if the writing is to be regarded in all cases as constituting the contract, in many cases there would be but one contracting party.

Another idea gives weight to the argument for the position advocated by the plaintiffs; and that is, that such a construction of the statute upholds contracts according to the intention of parties

thereto, while it, at the same time, fully subserves all the purposes for which the statute was created. It must be borne in mind that verbal bargains for the sale of personal property are good at common law. Nor are they made illegal by the statute. Parties can execute them if they mutually please to do so. The object of the statute is to prevent perjury and fraud. Of course, perjury and fraud cannot be wholly prevented; but, as said by Bigelow, J., (3 Gray, 331,) "a memorandum in writing will be as effectual against perjury, although signed subsequently to the making of a verbal contract, as if it had been executed at the moment when the parties consummated their agreement by word of mouth." We think it would be more so. A person would be likely to commit himself in writing with more care and caution after time to take a second thought. The *locus penitentiæ* remains to him.

By no means are we to be understood as saying that all written instruments will satisfy the statute, by having the effect to make the contracts described in them valid from their first verbal inception. That must depend upon circumstances. In many, and perhaps, most instances such a version of the transaction would not agree with the actual understanding of the parties. In many cases, undoubtedly, the written instrument is *per se* the contract of the parties. In many cases, as for instance, like the ante-dating of the deed in *Egery* v. *Woodard*, 56 Maine, 45, cited by the defendant, the contract, (by deed,) could not take effect before delivery; the law forbids it. So a will made by parol is absolutely void. But all these classes of cases differ from the case before us.

A distinction is attempted to be set up between the meaning to be given to R. S., c. 111, § 4, where it is provided that no unwritten contract for the sale of goods "shall be valid," and that to be given to the several preceding sections where it provided that upon certain other kinds of unwritten contracts "no action shall be maintained;" the position taken being that in the former case the contract is void, and in the other cases only voidable perhaps, or not enforceable by suit at law. But the distinction is without any essential difference, and is now so regarded by authors generally and in most of the decided cases. All the sections referred to rest upon precisely the same policy. Exactly the same object is

aimed at in all. The difference of phraseology in the different sections of the original English statute, of which ours is a substantial copy, may perhaps be accounted for by the fact, as is generally conceded, that the authorship of the statute was the work of different hands. Although our statute (R. S. 1871, § 4,) uses the words "no contract shall be valid," our previous statutes used the phrase "shall be allowed to be good ;" and the change was made when the statutes were revised in 1857, without any legislative intent to make an alteration in the sense of the section. (R. S. 1841, c. 136, § 4.) The two sets of phrases were undoubtedly deemed to be equivalent expressions. The words of the original English section are, "shall not be allowed to be good," meaning, it is said, not good for the purpose of sustaining an action thereon without written proof. Brown St. Frauds, §§ 115, 136, and notes to the sections. Benjamin's Sales, § 114. *Townsend* v. *Hargraves*, 118 Mass. 325 ; and cases there cited.

There are few decisions that bear directly upon the precise point which this case presents to us. From the nature of things, a state of facts involving the question would seldom exist. But we regard the case of *Townsend* v. *Hargraves*, above cited, as representing the principle very pointedly. It was there held that the statute of frauds affects the remedy only and not the validity of the contract ; and that where there has been a completed oral contract of sale of goods, the acceptance and receipt of part of the goods by the purchaser takes the case out of the statute, although such acceptance and receipt are after the rest of the goods are destroyed by fire while in the hands of the seller or his agent. The date of the agreement rather than the date of the part acceptance was treated as the time when the contract was made ; and the risk of the loss of the goods was cast upon the buyer. *Vincent* v. *Germond*, 11 Johns. 283, is to the same effect. We are not aware of any case where the question has been directly adjudicated adversely to these cases. *Webster* v. *Zielly*, 52 Barb. (N. Y.) 482, in the argument of the court, directly admits the same principle. The case of *Leather Cloth Co.* v. *Hieronimus*, L. R., 10 Q. B. 140, seems also to be an authority directly in point. *Thompson* v. *Alger*, 12 Met. 428, 435 and *Marsh* v. *Hyde*, 3 Gray, 331,

relied on by defendant, do not, in their results, oppose the idea of the above cases, although there may be some expressions in them inconsistent therewith. Altogether another question was before the court in the latter cases.

But there are a great many cases where, in construing the statute of frauds, the force and effect of the decisions go to sustain the view we take of this question, by the very strongest implication: Such as; that the statute does not apply where the contract has been executed on both sides; *Bucknam* v. *Nash*, 12 Maine, 474;—that no person can take advantage of the statute but the parties to the contract, and their privies; *Cowan* v. *Adams*, 10 Maine, 374;—that the memorandum may be made by a broker; *Hinckley* v. *Arey*, 27 Maine, 362; or by an auctioneer; *Cleaves* v. *Foss*, 4 Maine, 1;—that a sale of personal property is valid when there has been a delivery and acceptance of part, although the part be accepted several hours after the sale; *Davis* v. *Moore*, 13 Maine, 424; or several days after; *Bush* v. *Holmes*, 53 Maine, 417; or ever so long after; Browne St. Frauds, § 337, and cases there noted;—that a creditor, receiving payments from his debtor without any direction as to their application, may apply them to a debt on which the statute of frauds does not allow an action to be maintained; *Haynes* v. *Nice*, 100 Mass. 327;—that a contract made in France, and valid there without a writing, could not be enforced in England without one, upon the ground that the statute related to the mode of procedure and not to the validity of the contract; *Leroux* v. *Brown*, 12 C. B. 801; but this case has been questioned somewhat;—that a witness may be guilty of perjury who falsely swears to a fact which may not be competent evidence by the statute of frauds, but which becomes material because not objected to by the party against whom it was offered and received; *Howard* v. *Sexton*, 4 Comstock, 157;—that an agent who signs a memorandum need not have his authority at the time the contract is entered into, if his act is orally ratified afterwards; *Maclean* v. *Dunn*, 4 Bing. 722;—that the identical agreement need not be signed, and that it is sufficient if it is acknowledged by any other instrument duly signed; *Gale* v. *Nixon*, 6 Cow. 445;—that the recognition of the contract may be contained in a letter;

or in several letters, if so connected by "written links" as to form sufficient evidence of the contract;—that the letters may be addressed to a third person; Browne St. Frauds, §. 346 ; *Fyson* v. *Kitton*, 30 E. L. & Eq. 374 ; *Gibson* v. *Holland*, L. R. 1 C. P. 1 ;—that an agent may write his own name instead of that of his principal if intending to bind his principal by it ; *Williams* v. *Bacon*, 2 Gray, 387, 393, and citations there ;—that a proposal in writing, if accepted by the other party by parol, is a sufficient memorandum ; *Reuss* v. *Picksley*, L. R., 1 Exc. 342 ;—that where one party is bound by a note or memorandum the other party may be bound if he admits the writing by another writing by him subsequently signed ; *Dobelle* v. *Hutchinson*, 3 A. & E. 355 ;—that the written contract may be rescinded by parol, although many decisions are opposed to this proposition ; *Richardson* v. *Cooper*, 25 Maine, 450 ;—that equity will interfere to prevent a party making the statute an instrument of fraud ; *Ryan* v. *Dox*, 34 N. Y. 307 ; *Hassam* v. *Barrett*, 115 Mass. 256, 258 ;—that a contract verbally made may be maintained for certain purposes, notwithstanding the statute ;—that a person who pays his money under it cannot recover it back if the other side is willing to perform ; and he can recover if performance is refused; *Chapman* v. *Rich*, 63 Maine, 588, and cases cited ;—that a respondent in equity waives the statute as a defense unless set up in plea or answer ; *Adams* v. *Patrick*, 30 Vt. 516 ;—that it must be specially pleaded in an action at law ; *Middlesex Co.* v. *Osgood*, 4 Gray, 447 ; *Lawrence* v. *Chase*, 54 Maine, 196 ;—that the defendant may waive the protection of the statute and admit verbal evidence and become bound by it; Browne St. Frauds, § 135.

It may be remarked, however, that in most courts a defendant may avail himself of a defense of the statute under the general issue. The different rule in Massachusetts and Maine, grew out of the practice act in the one state and in the statute requiring the filing of specifications in the other.

It is clear from the foregoing cases, as well as from many more that might be cited, that the statute does not forbid parol contracts, but only precludes the bringing of actions to enforce them. As said in *Thornton* v. *Kempster*, 5 Taunt. 786, 788, "the

statute of frauds throws a difficulty in the way of the evidence." In a case already cited, Jervis, C. J., said, "the effect of the section is not to avoid the contract, but to bar the remedy upon it, unless there be writing." See analogous case of *McLellan* v. *McLellan*, 65 Maine, 500.

But the defendant contends that this course of reasoning would make a memorandum sufficient if made after action brought, and that the authorities do not agree to that proposition. There has been some judicial inclination to favor the doctrine to that extent even, and there may be some logic in it. Still the current of decision requires that the writing must exist before action brought. And the reason for the requirement does not militate against the idea that a memorandum is only evidence of the contract. There is no actionable contract before memorandum obtained. The contract cannot be sued until it has been legally verified by writing; until then there is no cause of action, although there is a contract. The writing is a condition precedent to the right to sue. Willes, J., perhaps correctly describes it in *Gibson* v. *Holland, supra,* when he says, "the memorandum is in some way to stand in the place of a contract." He adds : "The courts have considered the intention of the legislature to be of a mixed character ; to prevent persons from having actions brought against them so long as no written evidence was existing when the action was instituted." Browne St. Frauds, § 338. Benjamin's Sales, § 159. *Fricker* v. *Thomlinson,* 1 Man. & Gr. 772. *Bradford* v. *Spyker,* 32 Ala. 134. *Bill* v. *Bament,* 9 M. & W. 36. *Philbrook* v. *Belknap,* 6 Vt. 383. In the last case it is said, "strictly speaking, the statute does not make the contract void, except for the purpose of sustaining an action upon it, to enforce it."

*Action to stand for trial.*

Appleton, C. J., Walton, Danforth, Virgin and Libbey, JJ., concurred.