[Civ. No. 718. · Third Appellate District.—September 19, 1910.]

In the Matter of the Application for Voluntary Dissolution of BALFOUR & GARRETTE, a Private Corporation. BALFOUR & GARRETTE, Appellant, v. T. C. WORLEY, Respondent.

CORPORATIONS—VOLUNTARY DISSOLUTION—SATISFACTION OF ALL CLAIMS AND DEMANDS ESSENTIAL—PLEADING—BURDEN OF PROOF.—Section 1228 of the Code of Civil Procedure prescribes the essential averments of a petition for a voluntary dissolution of a corporation, including the fact that "all claims and demands against the corporation have been satisfied and discharged," which must be proved, otherwise the court would be without the power or jurisdiction to decree a dissolution. The burden of proving all the facts required to be set forth in the petition is upon the corporation.

ID.—OPPOSITION BY CREDITOR—INVALID ORAL CONTRACT FOR COMMISSIONS ON SALES—SUBSEQUENT WRITTEN MEMORANDUM.—Where a creditor who opposed the voluntary dissolution of the corporation was originally employed thereby under an invalid oral contract to sell its lands upon commissions, including a fixed percentage on all lands sold, to be paid out of the proceeds of the sale, yet when, after certain sales were made, the corporation gave him a written memorandum, setting forth all sales made, and the commissions allowed therefor, and prescribing the same commissions to be allowed on all sales, such written memorandum was sufficient to relieve the whole transaction of sales from the operation of the statute of frauds.

ID.—CONSTRUCTION OF STATUTE OF FRAUDS—PURPOSE—ESTABLISHMENT OF RULES OF EVIDENCE.—Even if the statute of frauds should be regarded as going to the essential validity of contracts, there is no just reason why they should not be validated by a subsequent writing sufficiently clear and definite to disclose in writing the original terms thereof. But the statute of frauds, in its original conception, was intended to establish rules of evidence affecting the remedy, and to require written evidence alone, to prove what the contract was, and not to provide that the writing shall constitute the contract.

ID.—AUTHORITY OF CORPORATION FOR MEMORANDUM—EXECUTION BY PRESIDENT — EVIDENCE WITHOUT OBJECTION — AUTHORITY ADMITTED.—The authority of the corporation for the memorandum in writing is not required to be shown by the express resolution of its directors. It is sufficient that it was executed by the president of the corporation, whose authority to execute it was not objected to

when it was admitted in evidence, and was expressly conceded by the counsel for the corporation.

ID.—AMENDED OPPOSITION BY CREDITOR TO CONFORM TO PROOF—MODE AND TIME OF PAYMENT—NEW CAUSE OF OPPOSITION NOT STATED.— Where the original opposition by the creditor to the voluntary dissolution of the corporation alleged an indebtedness to him in a sum exceeding $300 for commissions due him, and the evidence showed that the commissions would become due and payable only when the installments on the sums for which tracts of land sold by him were paid to the corporation, the permitted amendment of the opposition to conform to the proofs does not show a new, distinct and different cause of opposition from that set up in the original.

ID.—GIST OF OPPOSITION—FORM OF CLAIM OR DEMAND IMMATERIAL— AMENDMENT NOT CHANGING ESSENTIAL GIST.—The gist of an opposition to the dissolution of a corporation lies in the fact that there exists against such corporation a valid claim or demand; and it is manifest that form or character of such claim or demand is immaterial. Though the original opposition charged that the contestant has an unconditional vested claim against the corporation, and though the amendment thereof to conform to the proof states a contingent claim or demand, payable out of the unpaid balances to become due on the purchase prices of the tracts sold by him, yet such amendment sets forth a valid claim or demand against the corporation, which does not change the essential gist of the original opposition.

ID.—CONTINGENT LIABILITY CRYSTALLIZING INTO VESTED LIABILITY.— The fact that the liability shown by the proofs is contingent will not affect the claim or demand, being such as will interrupt the voluntary discharge of the corporation. The contingent liability will crystallize into an unconditional enforceable right, if the purchasers discharge their obligations to the corporation.

ID.—END OF CONTINGENT LIABILITY.—The contingent liability on the contracts may cease, whether their terms are complied with or not. If their terms are fully performed the agent will be entitled to his full commissions, for which, when paid, there would be no further claim or demand against the corporation. If the purchasers fail to make their payments when due, the contracts would lapse, and the corporation's liability to the opposing creditor would thereupon cease.

ID.—RIGHT OF CREDITOR TO OPPOSE DISSOLUTION OF CORPORATION—CUMU- LATIVE REMEDY NOT CONFLICTING.—A creditor may oppose the voluntary dissolution of a corporation on the ground of the essential condition of dissolution that all claims and demands against it must be satisfied and discharged. The remedy afforded creditors by section 400 of the Civil Code is merely cumulative, and not conflicting with the remedy by opposition to the voluntary dissolution. Indeed, without such opposition the court would be powerless to

grant a voluntary dissolution without affirmative proof that all claims and demands against the corporation have been satisfied and discharged.

ID.—NATURE OF OPPOSITION—JUDGMENT FOR CLAIM NOT SOUGHT.—The nature of the opposition by the creditor is to prevent the voluntary dissolution of the corporation, without satisfying his claim, and not to seek a judgment for the claim.

ID.—EXISTENCE OF CLAIM ADMITTED—IMMATERIAL ERROR.—Where the claim of the opposing creditor was not only proved but admitted by the officer of the corporation to exist against it, the existence of such claim was the only matter involved, and immaterial error not affecting that matter may be disregarded.

ID.—EVIDENCE—TERMS OF ORAL AGREEMENT—CONFORMITY TO WRITTEN MEMORANDUM.—It was proper to receive evidence as to the terms of the oral agreement for compensation of the agent affecting sales, and where such evidence conformed to the terms and conditions of the written memorandum evidencing it, its admission could not be prejudicial.

APPEAL from a judgment of the Superior Court of Yolo County, and from an order denying a new trial. N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

E. E. Gaddis, for Appellant.

Arthur C. Huston, for Respondent.

HART, J.—This is an application on the part of the above-named corporation for its voluntary dissolution. The proceeding is authorized by the provisions of section 1227 to 1233, inclusive, of the Code of Civil Procedure.

Before the expiration of the time of the publication of the notice of said application as prescribed by section 1230 of said code, the contestant, T. C. Worley, filed objections to said application. (Code Civ. Proc., sec. 1231.) The ground upon which said opposition is interposed is that said corporation "is indebted to the said T. C. Worley in a sum exceeding $300 for commissions due to the said Worley for acting as the agent of the said corporation for selling certain lands in the county of Colusa, state of California," etc.

An answer to said opposition was in due time filed by the corporation in which it denied that it was indebted to said Worley in any sum or that it was a creditor of said Worley.

Upon the issues thus framed the contest was tried and a judgment rendered and entered disallowing the prayer of the petitioner.

Thereafter the corporation moved for a new trial which was denied.

This appeal is from the judgment and the order denying the corporation a new trial. In this connection it may be suggested that the claim of the respondent that a "motion for a new trial cannot be made in a proceeding of this kind," and that, therefore, the "appeal from the order" denying the same is abortive, cannot, even if tenable, avail anything here, since there is also an appeal from the judgment on a bill of exceptions, on which appeal many of the important alleged errors of law occurring at the trial of the contest may be reviewed. But as the judgment here must be against appellant, we shall treat the appeal from the order, so far as we may feel required to consider it, as having been properly taken.

Section 1228 of the Code of Civil Procedure prescribes the essential averments of a petition for a voluntary dissolution of a corporation, and, among these, the fact that "all claims and demands against the corporation have been satisfied and discharged" must be alleged. Obviously, the facts thus required to be stated in the petition must be proved, otherwise the court would be without the power or jurisdiction to decree a dissolution. And the burden of proving all the facts required to be set forth in the petition is, of course, on the corporation.

It appears from the evidence that in the year 1907 Worley was employed by the corporation to sell certain lands owned by said corporation and situated in Colusa county. These lands consisted of two large ranches, which were subdivided into small tracts by the corporation and thus placed on the market for sale. Worley sold a large number of said tracts of land, and for the services thus rendered the corporation agreed that he should receive, in addition to a salary of $100 per month, commissions at the rate of two and one-half per cent on the total amounts realized on all such sales. The

terms upon which these sales were made consisted of the payment of a certain amount of the purchase price in cash on the execution of the contract of sale, and the balance in installments. Worley's commissions were to be paid as the purchasers paid in these installments to the corporation.

The agreement thus entered into between the parties was not originally reduced to writing.

It is first contended by the appellant that the alleged claim of Worley did not constitute a valid demand against the corporation for the alleged reason that it is based upon and grows out of an unwritten or oral agreement which, to be valid, is required by the statute of frauds to be committed to writing.

It is further insisted that the court, by permitting the contestant to "amend" his opposition after all the testimony had been received, committed a fatal error, in that the alleged amendment involved the statement of an entirely new and substantive cause of opposition, different and distinct from that alleged in the original opposition.

The first point was urged before the trial court on objections to the proof of the alleged contract and on a motion for a nonsuit presented at the close of the case for the contestant.

1. Section 1973, subdivision 6, of the Code of Civil Procedure, provides that "an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission" is invalid, "unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged," etc.

The evidence discloses that the original agreement between the corporation and Worley was oral, or unwritten, and, manifestly, if this were all the testimony received showing or tending to prove such agreement, it would be insufficient to establish a valid contract between the parties, and, necessarily, failure to disclose such a claim or demand against the corporation as would justify the court in denying it the right to be dissolved would follow. But after certain sales were made, the corporation, by a memorandum in writing, signed by it, expressed the terms and conditions of the contract, thus admitting the making of the oral agreement, and, we think, this writing is sufficient to relieve the transaction from the operation of the statute. This memorandum consisted of a

letter addressed to Worley, dated "March 4th, 1908," and, as stated, signed by the corporation in its corporate name. This letter, in part, reads as follows:

"E. & O. E. following sales of the Redington & Hornlein ranches have been made on varied and divers terms with which you are familiar, and we have agreed to pay you a commission of 2½ per cent on same, due and payable when the terms and conditions of the various contracts have been complied with, viz." Then follows a list of the names of purchasers of the lands, together with the several and respective amounts which they were obligated to pay to the corporation by reason of said sales. The letter concludes with a request that Worley "check this up, and if any errors exist report them to us."

The foregoing letter clearly defines the terms of the oral agreement previously entered into between the parties. It is definite and certain, and leaves no ground for conjecture as to its meaning or the intention of the parties, or the terms and conditions upon which Worley's employment rested. And we think it is clearly sufficient to satisfy the requirements of the statute, notwithstanding the fact that it was not written until after the execution of the terms of the agreement on Worley's part.

There appears to have been in the early cases an apparent diversity of views among the courts concerning the nature and effect of the statute of frauds, some of the decisions appearing to treat such statutes, which, like ours, declare without qualification that the contracts to which they relate are *invalid* unless put in writing in some form, not as promulgating mere rules of evidence, but as going to the very vitality of the contracts themselves. We have not had our attention directed by counsel to any California cases which have passed directly upon this precise question. Of course, it will be admitted that contracts which are required to be in writing by the statute are in themselves perfectly valid—that is to say, there could be nothing, abstractly speaking, urged against their validity if the statute did not compel them to be in writing. However, should we feel required to view the statute as it reads in this state as affecting such contracts themselves, or, in other words, as constituting the writing as an essential element of the contracts themselves, we can even then perceive no sound or just reason in principle why, if originally fatally

defective in the respect referred to, they could not be made valid by a subsequent writing, sufficiently clear and definite to disclose the terms and conditions of the agreement, somewhat in analogy to the principle which sustains a transaction in which an agent has performed some act in excess of his authority as such and in which the principal has subsequently ratified such act.

But the statute of frauds, in its original conception, was, as the purpose expressed in its title or preamble clearly implies (that is, to prevent frauds and perjuries), undoubtedly intended to establish mere rules of evidence for the preservation, in the highest and most unquestionable form, of the evidence of the terms of contracts relating to subjects involving the gravest concern to contracting parties. In other words, the original object of the statute was unquestionably to lay down in express terms certain rules by which, only, certain contracts, in themselves perfectly legal and valid, could be proved. The provisions of the statute, in other words, affected the remedy—that is, in effect deprived the party seeking to enforce a contract coming within their purview of his right of action if such contract were not in writing. And, we think, no more can be said of the purpose and effect of our statute, although it declares, as seen, without qualification, that the contracts with which it deals are invalid unless reduced to writing in some form. Its evident purpose, like that of the English statute, 29 Charles II, chapter 3, is to require contracting parties to commit to writing and thus put in enduring and unquestionable form, as evidence thereof, the terms of their agreements upon subjects to which the contracts affected by the statute relate. This is the view of statutes of frauds, phrased as ours is, expressed by courts of other jurisdictions, and in our opinion it is the correct view.

In *Baird* v. *Munroe*, 66 Me. 337, [22 Am. Rep. 571], a verbal contract had been made by the defendant with the plaintiffs for the purchase of a quantity of ice, to be delivered by immediate shipment to the defendant. The latter prevented the plaintiffs from performing the contract on their part "according to the preparations made by them for the purpose." On a date subsequently to the making of the oral agreement, the parties put said agreement into writing. In an action for a breach of said contract, the question pre-

sented was, stating it in the language of the opinion, "whether, in view of the statute of frauds, the writing in this case shall be considered as constituting the contract itself, or at any rate any substantial portion of it, or whether it may be regarded as merely the necessary legal evidence by means of which the prior unwritten contract may be proved. In other words, is the writing the contract, or only evidence of it? We incline to the latter view." The court then proceeds to sustain its conclusion by reasoning which we regard as conclusive. Among other things the court says: "A distinction is attempted to be set up between the meaning to be given to R. S., chapter III, section 4, where it is provided that no unwritten contract for the sale of goods 'shall be valid,' and that to be given to the several preceding sections where it is provided that upon certain other kinds of unwritten contracts 'no action shall be maintained,' the position taken being that in the former case the contract is void, and in the other cases only voidable perhaps, or not enforceable by suit at law. But the distinction is without any essential difference, and is now so regarded by authors generally and in most of the decided cases. All the sections referred to rest upon precisely the same policy. Exactly the same object is aimed at in all." (See *Townsend* v. *Hargraves,* 118 Mass. 325; Browne on Statute of Frauds, secs. 115, 136; Benjamin on Sales, sec. 114; *Coles* v. *Brown,* 10 Paige (N. Y.), 526.)

But it is contended that the subscription of the mere corporate name of the corporation to the letter is not of itself sufficient to disclose the authenticity of said writing. In other words, the claim is that, in order to show that the letter was written and addressed to Worley by authority of the corporation itself, there must not only have been subscribed to the letter the corporate name and signature of the corporation, but, in addition, it must have been made to appear from the letter itself that the document was the result of the corporate act of the corporation, and to that end, and in order to bind the corporation, should have contained "the signature and official station of the official authorized to execute the same."

In answer to this contention, it is first to be observed that counsel for appellant made no objection to the admission of the letter in evidence on the ground that the same was not,

or appeared not to have been, authorized by the corporation itself. Moreover, it appears that Mr. Garrette, a member and president of the corporation, wrote and mailed the letter to Worley, and it was expressly admitted by counsel for the appellant, during the hearing of the contest, that Garrette was authorized to represent the corporation in the transaction; that, to use counsel's own language, "whenever Garrette spoke, it was the corporation." And, in this connection, it may be added that Garrette admitted that the terms of the oral contract were expressed and embraced in said letter.

2. There is no merit in the point that the amended objections state a new, distinct and different cause of opposition from that set up in the original. The latter alleged that the corporation was indebted to Worley in a sum exceeding $300 "for commissions due to the said Worley," etc. The evidence disclosed that the commissions to which Worley would be entitled would become due and payable only when the installments on the sums for which the tracts of land were sold by him were paid to the corporation. The contestant was allowed to amend his opposition so that it would conform to this proof, and it was, therefore, alleged, in addition to the allegations of the original, that the commissions would become due and payable when payments for the lands were made to the corporation by the purchasers.

The gist of an opposition to the dissolution of a corporation lies in the fact that there exists against such corporation a valid claim or demand, and, therefore, it is manifest that the form or character of such claim or demand is immaterial. Here the original opposition charged that the contestant has an unconditional, vested claim against the corporation. The evidence, admitted without objection, except in so far as it affected the question of the statute of frauds, disclosed a contingent claim and liability—that is, that the corporation's indebtedness to Worley was contingent upon the payment of the unpaid balances to become due on the purchase prices of the tracts of land sold by Worley. If such a liability constitutes a valid claim against the corporation, within the meaning of section 1228 of the Code of Civil Procedure, then the amended objections do not, obviously, state a new or different opposition from that set forth in the original. The

amendment, in fact, does not, so far as the essential gist of the objections is concerned, go any further than the original opposition, the allegations as to the nature of the claim, with regard to the time at which it would become a vested and a present enforceable right being, as declared, unnecessary and immaterial, and, therefore, surplusage.

That the liability existing in favor of Worley against the corporation constitutes a claim or demand which will interrupt the voluntary dissolution of a corporation under the provisions of section 1228 of the Code of Civil Procedure, we can perceive no sound reason for doubting. The liability, although contingent, will crystallize into an unconditional, enforceable right if the purchasers discharge their obligations to the corporation. And it is no argument against this view to say that the corporation could thus, against its will, be perpetuated as such indefinitely; for the contracts between it and the purchasers of the lands sold by Worley fix definite and certain times at which all payments, including the final payments, shall be made, and therefore definitely fix the times at which such contracts may become *functus officio,* whether their terms are complied with or not. If the terms of the contracts are fully performed by the purchasers, Worley would be entitled to his commissions, and if paid, there would thus, of course, cease to exist any claim or demand against the corporation, so far as Worley was concerned. If the purchasers fail to make their payments when due, the contracts would lapse and the corporation's liability to Worley would thereupon cease.

But it is argued with apparent earnestness that creditors have no right to object to the voluntary dissolution of a corporation. Manifestly, this argument flies squarely in the face of the statute, and to sustain it the plain language and obvious purpose of the law must be arbitrarily ignored. The contention appears to be founded on the fact that section 400 of the Civil Code makes provision for the protection of the rights of creditors of corporations that have been dissolved. But there is nothing in this provision which in any wise conflicts with the right given a creditor by section 1231 of the Code of Civil Procedure to object to the application by a corporation to be dissolved, nor with the provisions of section 1228

of said code requiring a corporation making such application to allege and prove, before the court is authorized to declare the dissolution, that all claims and demands against it have been satisfied and discharged. The remedy afforded creditors by section 400 of the Civil Code is only cumulative or in addition to that afforded by the proceedings authorized by section 1227 et seq. of the Code of Civil Procedure. If a creditor should fail to object to the dissolution of a corporation it would, nevertheless, as before stated, still be incumbent upon the corporation to prove the essential averments of the petition for a dissolution, among which is the averment that all claims and demands against it have been satisfied and discharged, and, on failure of such proof, the court would be as powerless to declare it dissolved as it would be if legal objections by some person had been made against its dissolution and sustained by the proofs. In other words, a private corporation can only be dissolved in the manner pointed out by the legislature and by a compliance with the terms and conditions imposed by the statute. (*State I. & I. Co.* v. *San Francisco*, 101 Cal. 135, [35 Pac. 549].) And if dissolved by the court's judgment, still having creditors who had not objected to the dissolution in the proceeding for that purpose, section 400 of the Civil Code would still afford such creditors a remedy for the protection and judicial assertion of their claims against the corporation. As stated, the two remedies in no way conflict. The one is to preserve to the creditor the right to proceed *directly* against the corporation; the other authorizes him, after the corporation has been dissolved, to proceed, if necessary, against the directors or other persons appointed by the court as trustees of such corporation. (*Havemeyer* v. *Superior Court*, 84 Cal. 365 et seq., [18 Am. St. Rep. 192, 24 Pac. 121]; *Crossman* v. *Vivienda W. Co.*, 150 Cal. 580, [89 Pac. 335].)

3. There are, as before stated, some other rulings of which complaint is made. To these we do not feel required to give extended attention. They relate to the exclusion and admission of certain testimony other than that bearing upon the question of the validity of the contract or whether said contract is within the statute of frauds, which question we have already disposed of. The claim of Worley against the cor-

poration having been proved by competent evidence, and, in fact,. admitted, the rulings now referred to, conceding them to be erroneous, are manifestly harmless.

The purpose of the opposition was not to secure a judgment in favor of Worley for the amount of his claim. The purpose was, as we have shown, to show that "all claims and demands against the corporation" had not been "satisfied and discharged," and thus prevent a decree of the court declaring it dissolved. This was the only issue involved and, obviously, the only question that could be submitted for trial in this proceeding, aside from those other necessary facts which the first subdivision of section 1228 of the Code of Civil Procedure provides must be set out in the petition. Since the claim of Worley was not only properly proved but admitted by its officers to exist against the corporation, such errors, if errors they be, as are involved in the rulings excluding an answer to the question whether Worley knew "at this time" he was a "creditor of the corporation"; in striking out the testimony of Garrette relating to the details of the transactions between the corporation and Worley; refusing to permit Garrette to explain why he "gave Worley two and one-half per cent commission in addition to the $100 salary," and other alleged errors of a like nature, are immaterial. The oral testimony leading up to the execution of the written contract, or, speaking more accurately, leading up to the writing of the letter embracing the terms of the oral contract, was intended only as explanatory of the circumstances under which the contract was made and as introductory to the proof of the letter. Necessarily, the terms of the oral agreement had to be shown, but this testimony as to the terms and conditions of the agreement as originally made in no manner or degree changed or varied or differed from the terms and conditions of the contract as evidenced by the writing. The parol testimony, having agreed in all substantial particulars with the terms and conditions of the contract as disclosed by the letter, cannot be held to have been prejudicial.

Some of the findings are challenged on various grounds. The essential finding that a claim against the corporation has not been satisfied and discharged is of itself sufficient to support the judgment.

We have found no errors in the rulings of the court, either upon objections to evidence or the motion for a nonsuit, or anything with regard to the findings, which would justly warrant a reversal.

The order and judgment are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 10, 1910.