[No. 9,241.  Department One. — April 30, 1884.]

JANE L. CONNER, Appellant, v. LEE STANLEY, Administrator of the Estate of William Jarvis, Deceased, Respondent.

Contract— Antenuptial Settlement— Consideration. —A written contract by which a man and woman agreed to intermarry at a future time, and which provided that, in consideration of their mutual promise, "the party of the first part (the man) grants and gives to the party of the second part" certain described bonds, all of which "he promises to deliver to her on or before the day of their marriage, to be and become her own absolute property," is an antenuptial settlement which he cannot avoid by a refusal to fulfil his agreement to marry.

Appeal from a judgment of the Superior Court of the county of Sacramento.

The judgment was upon a general demurrer to the complaint.

The facts are stated in the opinion.

*George Cadwalader*, for Appellant.

Plaintiff's agreement to marry defendant was a sufficient consideration for the grant of the bonds. (*Prewit* v. *Wilson*, 103 U. S. 22; 1 Parsons on Contracts, 554; *Bunnell* v. *Witherow*, 29 Ind. 123; *Albert* v. *Winn*, 5 Md. 66; *Rivers* v. *Thayer*, 7 Rich. 136; *Roberts* v. *Roberts*, 22 Wend. 147.) The death of the defendant's intestate did not annul the grant. (*Smith* v. *Allen*, 5 Allen, 454.) Readiness and willingness of plaintiff to marry, she having the requisite legal status, makes out her case. (2 Chitty's Plead. 571; *Graham* v. *Martin*, 64 Ind. 571.) A promise of marriage is a good consideration. (12 Mod. 459.)

*Freeman & Bates*, for Respondent.

The plaintiff had no cause of action. The contract was with respect to a marriage in the future. The grant was not to take effect until the marriage. These terms of the contract cannot be disregarded. (1 Story on Contracts, § 806; Addison on Contracts, § 220; Civ. Code, §§ 1636, 1642, 1650, 1653.) Words of a present grant do not operate to convey a title where the whole instrument shows that the grantor for the present reserves

such title. (*Chapman* v. *Glassell*, 13 Ala. 50; 48 Am. Dec. 41, note; *Stokey* v. *Trout*, 3 Watts, 163; *Williams* v. *Bentley*, 3 Casey, 301; *Jackson* v. *Myers*, 3 Johns. 388; *Foster* v. *Foster*, 1 Lev. 56; *Stewart* v. *Lang*, 37 Pa. 201; *Ives* v. *Ives*, 13 Johns. 235; *Ogden* v. *Brown*, 33 Pa. 247.) When there is an executory contract of a strictly personal nature, death determines it. (1 Parsons on Contracts, 111; *Harris* v. *Tyson*, 36 Am. Rep. 126.) Defendant's intestate was not bound to deliver the bonds until on or before the day of the marriage. He might wait until that day. (*Jordan* v. *Tate*, 19 Ohio St. 586; Story on Prom. Notes, p. 41; *Wall* v. *Simpson*, 6 Marsh. J. J. 155.)

Ross, J.—On the 21st day of June, 1882, plaintiff and the defendant's intestate, William Jarvis, executed the following instrument in writing:—

"This indenture, made and entered into this 21st day of June, 1882, by and between William Jarvis, of the county of Sacramento, State of California, party of the first part, and Mrs. J. L. Conner, of the city and county of San Francisco, State of California, party of the second part.

"Witnesseth, that whereas the party of the first part and the party of the second part have agreed, and do hereby mutually agree to marry each other, and that in consideration thereof, and of the mutual affection existing between them, the party of the first part grants and gives to the said party of the second part, ten thousand (10,000) dollars' worth of the bonds of the Natoma Water and Mining Company, a corporation duly organized under the laws of the State of California, being twenty bonds of five hundred (500) dollars each, made payable to bearer, now in the possession of the party of the first part, all of which he promises to deliver to her, the party of the second part, on or before the day of their said marriage, to be and become her own absolute property in her own name as her separate estate.

"It is further agreed that one half of the interest on said bonds, as the same becomes due and payable, from time to time, shall be paid to the party of the first part, and the other half thereof shall be paid to the party of the second part.

"And the party of the second part hereby agrees to keep and perform her agreement herein in good faith; and they hereby

mutually agree to marry each other within a reasonable time hereafter.

"In witness whereof, the parties have hereunto set their hands and seals the year and day first above written.

[SEAL.]                                "WM. JARVIS.
[SEAL.]                                "MRS. J. L. CONNER.
"Signed in the presence of P. B. Nagle."

As the case is presented, it appears that at the time of the execution of the contract both of the contracting parties were unmarried; that the plaintiff, in accordance with the obligations imposed on her thereby, remained unmarried, and was, from the time of the making of the contract to the time of the death of Jarvis, which occurred on the 8th of September, 1882, always ready and willing to marry him, of which he was constantly advised; but that he in disregard of the obligation imposed upon him by the contract refused to marry the plaintiff, and continued such refusal to the time of his death. After the death of Jarvis, an administrator of his estate was appointed, to whom the plaintiff presented a verified claim based on the contract, which claim was rejected by the administrator. The action is to recover of the administrator the value of the bonds and one half of the accrued interest thereon. The interpretation of the contract adopted by the court below was, that, on the part of Jarvis, there was a mere promise to deliver the bonds upon the marriage of the parties within a reasonable time. "The happening of a future event, viz., the marriage, was," said the court, "a condition precedent to the vesting of the bonds in plaintiff." We cannot so construe the contract. The language is: "The party of the first part grants and gives to the party of the second part" certain described bonds then in the possession of the party of the first part, "all of which he promises to deliver to her, the party of the second part, on or before the day of their said marriage, to be and become her own absolute property in her own name as her separate estate." The bonds which he granted and gave he promised to deliver to the plaintiff on or *before* the day of their marriage; and the consideration for this was, the affection existing between the parties and their mutual agreement to marry. It was nothing more nor less than an antenuptial settlement, the consequences of which could not be

avoided by Jarvis' refusal to consummate his agreement to marry the plaintiff—she being at all times ready and willing to marry him and no reason for his refusal appearing. It was not for her to seek him, but it was his duty to have sought her in marriage within a reasonable time after the engagement. "The modesty of the sex is considered by the common law," said Lord Coke.

Jarvis having without excuse refused to consummate his engagement, and the plaintiff having in all things complied with the obligations imposed on her by the contract, she is legally and justly entitled to receive the consideration for which she plighted her troth. That the promise and conduct of the plaintiff constituted adequate and valuable consideration for the settlement does not admit of doubt. The circumstance that the marriage was not in fact consummated is immaterial. It was not consummated because of the fault of Jarvis, and it is a maxim of the law that no man shall take advantage of his own wrong. Besides, with respect to the sufficiency and value of the consideration, there does not appear to be any real and substantial distinction between a marriage formally solemnized and a binding and obligatory agreement, fairly made, to form such connection and enter into that relation. "All the consequences of a legal obligation," as said by the court in *Smith* v. *Allen*, 5 Allen, 458, "accompany such an agreement. The law enforces its performance by affording an effectual remedy against the party who shall, without legal excuse, fail to fulfill it. But a contract of this kind is not to be regarded as a valuable consideration merely because damages commensurate with the injury may be recovered of the party who inexecusably refuses to fulfill it. It is peculiar in its character, and has other effects and consequences attending it. It essentially changes the rights, duties, and privileges of the parties. They cannot, while it exists, without a violation of good faith, as well as of the material obligations to which it subjects them, negotiate a contract for such an alliance with any other person. A woman who has voluntarily made such an agreement cannot without indelicacy, and so not without exposing herself to unfavorable observation, and to some loss of public favor and respect, seek elsewhere, except for good and substantial reasons withdrawing

from the engagement by which she has bound herself, for preferment in marriage; and thus her promise and agreement to marry a particular person essentially change her condition in life. They materially affect not only her opportunities but her right to attempt in that way to improve them. A legal contract and promise made in good faith to marry another must, therefore, like an actual marriage, be deemed to be a valuable consideration for the conveyance of an estate."

Judgment reversed and cause remanded, with directions to the court below to overrule the demurrer to the amended complaint with leave to the defendant to answer.

McKINSTRY, J., and McKEE, J., concurred.