[Civ. No. 2317. Third Appellate District.—July 22, 1921.]

A. T. KINNEY, Respondent, v. JOS. HERSPRING & CO. et al., Appellants.

[1] GUARANTY — PAYMENT OF NOTE—CONSTRUCTION—EVIDENCE—UNCONDITIONAL PROMISE.—In this action upon an alleged guaranty for the payment of a promissory note, which guaranty was contained in a telegram and a copy of which is set out in the opinion, the instrument is held to be an unqualified and unconditional agreement of payment and not, as contended, a promise to pay only in the event that there should be sufficient proceeds from the sale of a crop of beans belonging to the maker of the note in the possession of the guarantor for purpose of sale and liquidation of the maker's indebtedness to the defendant.

[2] ID.—CONSIDERATION—FORBEARANCE OF ATTACHMENT.—A guaranty of payment of a promissory note in consideration of the payee's forbearance in attaching a crop of beans belonging to the maker in the possession of the guarantor for the purpose of sale and payment of the maker's debt to the guarantor is supported by a sufficient consideration.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Robert H. Schwab for Appellants.

Eugene S. Wachhorst and Donald E. Wachhorst for Respondent.

HART, J.—This action is against Joseph Herspring & Co. and Joseph Herspring, individually, the complaint alleging that "Jos. Herspring is the sole owner of and the sole person interested in the firm known and designated as Jos. Herspring & Co."

The action is upon an alleged guaranty for the payment of a promissory note executed by one H. A. French to the plaintiff. Said note was dated at Sacramento, July 12, 1917, and was payable "one day after date, without grace," and provides that "in case suit is instituted to collect this note or any portion thereof" the maker would pay any additional sum as the court may adjudge reasonable as at-

torney's fees in said suit. The note is set out in the complaint.

After stating that "the whole of said note is due, owing and unpaid," the complaint proceeds:

"That on the 14th day of February, 1918, at Sacramento City, County of Sacramento, State of California, defendants for a valuable consideration received prior to said date, made and subscribed a memorandum in writing of which the following is a copy:

" ' (Western Union Telegram)

" 'Sacramento Cal Feb 14

" 'A. T. Kinney 1523 Rockefeller Bldg.

" 'Advise you to indorse and make your note payable to me mailing same immediately I will guarantee payment on it you will have to do this so that I will be able to protect you otherwise I have no authority to hold out and honor any draft you may draw   Immediately upon settlement which will be next ten days I will mail you our check attend to this matter at once I will make French believe I purchased the note from you at discount this is strictly confidential.

" 'JOS. HERSPRING AND CO.'

"That the above and foregoing memorandum was delivered to plaintiff by defendants and thereby promised to answer to plaintiff for the debt of said H. A. French as evidenced by the herein set forth promissory note."

A demurrer to the complaint upon both general and special grounds was overruled, and thereupon the defendant answered, interposing, after certain admissions and denials, a reply to plaintiff's claim of guaranty, a digest of which may thus be given:

That the maker of the note above referred to (H. A. French) was indebted to defendant in an amount in excess of the sum of $22,000 as for and on account of advances made by defendant to French for the purpose of growing and harvesting certain bean crops; that the beans having been harvested, the same were turned over to defendant to market for French, the former, upon the sale of the beans, to retain so much as might be realized on such sale as would satisfy his claim against French and the balance to be paid to French; that, at some time in the year 1917, after the beans had been harvested and were in the possession of the defendant for the above indicated purpose, plaintiff offered

"to sell to the defendant the promissory note set forth in the complaint for the sum of $1,000.00, or desired an advance on behalf of said French of $1,000.00"; that defendant declined to advance any money to plaintiff for French, and stated to plaintiff he would advance no more money for French, for the reason that the latter was already indebted to him (defendant) in the sum of $22,000, etc.; that the defendant at the same time stated to plaintiff that if he (defendant), upon marketing the beans, had remaining in his possession of the funds derived from selling said beans any sum or sums of money in excess of French's indebtedness to him, he (defendant) "would protect said plaintiff, provided that said plaintiff would indorse over to said defendant the said promissory note"; that nothing further was said or done relative to the said note until the sending by defendant to plaintiff of the telegram set out in the complaint and of which a copy is presented hereinabove; that at the time said telegram was so sent, the beans were about to be sold and that it was believed that the moneys received upon such sale would be sufficient to satisfy both the indebtedness of French to defendant and the note from French to plaintiff; that the beans were sold, but it turned out that, owing to the inferior quality thereof, the proceeds of the sale thereof were sufficient only to satisfy defendant's debt against French.

The answer sets up as a special defense that "there is no consideration" for the alleged contract of guaranty.

As may be implied from the foregoing, the defendant did not deny the due execution of the note set out in the complaint or that it constituted, at the time of the commencement of the action, a subsisting obligation in favor of plaintiff and against French and did not deny that he sent to plaintiff the telegram set out in the complaint.

The findings are substantially of the facts as alleged in the complaint. The finding as to the alleged contract of guaranty is that it was executed *"for a valuable consideration* and in consideration that plaintiff indorse the promissory note [in question] to said defendant and deliver" same to him.

Judgment passed to plaintiff, and the defendant presents this appeal therefrom.

The defendant urges and argues these points as grounds for a reversal of the judgment: 1. That the telegram pleaded in the complaint, ''read and construed in its entirety,'' shows that it was not intended to evidence a guaranty of the payment of the note in suit by the defendant; 2. That assuming that the telegram was intended as a guaranty or the written evidence thereof, there was no consideration therefor passing from the plaintiff to the defendant, and that, therefore, the alleged guaranty is without legal force or nonenforceable.

It will, it is conceived, clarify the discussion of the points advanced in support of defendant's demand for a reversal of the judgment to present first a history of the case as it is disclosed by the evidence.

In the year 1917, the maker of the promissory note in suit, H. A. French, was about to engage in the planting and cultivation of beans on about one thousand acres of leased land situated in Sutter Basin, Sutter County.   In July of that year, finding himself without financial means with which to carry out said project, French entered into negotiations with the defendant (who was then doing a brokerage business under the firm name of Jos. Herspring & Co.) for a loan from the latter of sufficient money for his said purposes, and, after considering the proposition, the defendant agreed to and did provide French with such an amount of money as was found necessary to purchase the quantity of seed required for the entire acreage the latter had under lease.   The beans were planted, but from time to time thereafter, and until they were harvested, the defendant, in response to calls for more money by French, to be used in harvesting the crop, made advances to French until the total sum so advanced and loaned amounted approximately to $22,000.   The beans, after being harvested, were given over to the possession of the defendant, with the understanding that he would market the same, and, after reimbursing himself for the advances made to French, deliver or pay to the latter whatever sum that might remain over of the amount realized on the sale of the crop.

It appears that the plaintiff was, at the time of the several transactions occurring between him and French and between him and Herspring, a resident of Cleveland, in the state of Ohio.   It further appears that, in the year 1917, a son of

the plaintiff was employed in the state motor vehicle department of the state of California, at Sacramento City, in said state; that, in the year 1917, said French was superintendent of said department. The plaintiff testified:

"In July of the year 1917—I think it was July 12, 1917— . . . , Mr. French wired me and said he had gone into a proposition of raising beans, and he was short of money, if he could not raise $4,000 immediately he would lose all he had invested. Following that telegram, a telegram from my son advised me to help Mr. French out; then I wired Mr. French that he should draw on me for $4,000, which he did and wired a draft, and then he mailed me the note [the note in suit]. The note was to be paid,—I think it is a sight draft,—the latter part of October [1917], but I heard nothing from him of any consequence, so I came out here in January, the following January [1918]; he informed me that he had placed all of his goods in the hands of Mr. Herspring. Well, of course, I wanted my money, and he said the stock of beans had not been sold, and he did not think Mr. Herspring would pay anything until the property was disposed of. Then I asked him if he could give me a part of it; he said he would see what he could do. And he informed me he saw Mr. Herspring and Mr. Herspring refused to pay anything until the property was disposed of. So then I called on Mr. Herspring, and my intention was,— I told him so,—if the matter was not settled I would garnishee the account. He said, 'Mr. Kinney, don't do that, no occasion for doing that,' he said, 'I will give you my word of honor as a gentleman I will pay you every dollar so you won't lose a cent,' just exactly what he said, gave me his hand and shook hands with me. So, taking his word for it I did not garnishee the account. And it ran along for some time. My attorney has letters there, signed by Mr. Herspring and Herspring & Co., stating that he would pay the money 'for me not to worry about it'; that is right there, signed by him."

Plaintiff, continuing, testified that the defendant on the occasion above referred to "guaranteed to pay me and to pay me in full; he [defendant] said: 'You need not worry about it,' that it would be unnecessary to garnishee the account; . . . it was upon this conversation [with defendant] that I refrained from levying the attachment, or proceeding

further to secure myself for the collection of the account."
Proceeding, plaintiff stated that, while in Sacramento at the
time mentioned, he bought a bungalow in said city for his
son; that, being a little short of money then, he asked de-
fendant to make a payment of $1,000 on the note, so that he
could pay the purchase price of the bungalow; that, at first,
defendant said that he had not sold the beans and that he
could, therefore, not "pay" plaintiff then, but before plain-
tiff left the office of defendant the latter said: "Mr. Kinney,
if you are in need of money for that bungalow so badly, I
will give you a couple of thousand dollars," to which propo-
sition plaintiff replied: " 'I can make arrangements to get
the money for the bungalow, I don't want to discommode
you, because you claim you haven't sold the goods,' there-
fore I passed it along. That is all, absolutely, the conversa-
tion in his office with Mr. Herspring."

Herspring, so plaintiff testified, said to the latter that the
bean market then "was low," but that " 'the market will
be up the beginning of March,' he thought." Defendant
promised the plaintiff that he (plaintiff) would have his
money "by the first of March or early in February." To
this, plaintiff replied: "Then I will make a draft on you."
Defendant assented at first to that proposition, but almost
immediately recalled such assent, saying: "No, don't do it;
I will send you a check."

At some time after the conversation between plaintiff
and defendant related above the plaintiff left California for
his home in Ohio. No communication between the parties
concerning the note in suit was had after plaintiff returned
to his home until the receipt by him of the telegram from
the defendant which is set out in the complaint and above
reproduced herein. The date of said telegram, it will be
noted, is February 14, 1918. The plaintiff could not ex-
actly fix the period of time that elapsed between the date
of the conversation with Herspring in Sacramento, in which
the latter orally agreed to guarantee payment of the note,
and the receipt of the said telegram. Plaintiff stated, how-
ever, that the conversation referred to took place near or
about the middle of January, and from this it may be as-
sumed, or at least inferred, that the period of time elapsing
between the two events was approximately a month. But
be that as it may, the plaintiff immediately upon receipt of

said telegram forwarded the note in suit to defendant, indorsed upon the back thereof as follows: "Pay to Jos. Herspring & Co. or order, without recourse. A. T. Kinney."

Subsequently to the receipt by plaintiff of the telegram of February 14, 1918, from defendant, considerable correspondence, both by letter and wire, passed between the parties. The letters and telegrams were introduced in evidence. There is no necessity for presenting those documents herein. It is enough to state generally the substance of most of them, and so it may be said that, from the letters of defendant to the plaintiff, with the exception of one, it may fairly be implied that the first named regarded the transaction between him and plaintiff as involving a mere promise or agreement on his part to satisfy the French note only in the event that enough money was realized on the sale of the beans, after his own reimbursement out of the funds so received, to pay said note. The exception referred to embraces a letter to plaintiff dated March 19, 1918, in which defendant stated to the former, among other things, that he did "not want you to feel as though we had forgotten our promises to you regarding your note with French." The other letters of defendant to plaintiff were written after it had become evident to the former that the beans would not yield the returns that he had expected. The letters and telegrams of plaintiff to defendant, however, plainly indicate that he (plaintiff) regarded defendant as a guarantor of the payment of the note. In fact, they amounted to demands upon or requests addressed to defendant to pay the note.

Thus there has been presented, substantially, the evidence offered and received in support of the averments of the complaint.

[1] As might naturally be expected in a case where, as here, issue is joined upon the facts relied upon by the plaintiff and the defendant to sustain their respective claims, there is a positive variance between the story of the defendant and that of the plaintiff of the purport of the conversation between them in January, 1918, when the latter was in Sacramento. The defendant emphatically denied that, on the occasion mentioned, he agreed to guarantee the payment of the note upon the promise of plaintiff that he would not execute a threat to levy an attachment on the beans to secure the satisfaction of his note. Indeed, defendant went so

far as to say that no such threat was made by plaintiff in the course of the conversation referred to or at any other time in his presence or hearing. But the net result of the denials or adversary showing by defendant was or is only the production of an evidential disparity, the solution of which by the trial court in favor of plaintiff, there being no inherent discrepancies or weaknesses in his testimony, is conclusive upon us.

The position of the counsel for the defendant is, however, first: That, viewing the telegram of February 14, 1918, as a whole or in its entirety, it cannot reasonably be construed as importing or implying an intention in the defendant to guarantee the payment of the note; that, to the contrary (so the counsel proceeds), the telegram is capable of no other construction than that the agreement of defendant was that he would pay the note only upon the contingency that there was sufficient of the proceeds of the sale of the beans remaining in his hands to do so after his claim against French had been satisfied. The argument in support of that proposition is predicated mainly upon the words of the telegram: "You will have to do this [indorse the note over to defendant] so that I will be able to protect you, otherwise I have no authority to hold out and honor any draft you may draw." We are unable to discern any just reason for subscribing to counsel's position or the argument which he essays in support of it. The language of the telegram upon which the counsel relies to support his construction immediately follows language involving an unqualified and unconditional guaranty of the payment of the note, and, while doubtless it is true that there is to be implied from the telegram an intention or a desire or a purpose in the defendant to execute his contract of guaranty by means of funds obtained from a sale of the beans, we can perceive no just reason for holding that the language of the telegram affording that implication was intended to or does impair or detract from the force of the agreement of guaranty as it is embodied in the message. Indeed, we regard this a fair construction of the telegram: That, defendant having guaranteed the payment of the note for the reason above explained and to be hereinafter considered, conceived that he could the better protect himself from loss as a result of his guaranty by having the note indorsed over to him, thus

enabling him to reckon it in his account against French upon a settlement with the latter after the sale of the beans. But, whatever might have been his design or purpose in having the ownership of the note transferred to him, it is clear, as we have pointed out, that the telegram contains an agreement of guaranty by defendant of the payment of the note, unqualified by any of the other words or language thereof. Manifestly, it may be suggested, if the telegram had said: "I will guarantee payment of the note, provided there can be realized from a sale of the beans sufficient money to do so, after my claim has first been satisfied," a different question would be presented here. That, however, as has been shown, is not the telegram or the reasonable purport of its language.

[2] The second proposition is that the guaranty is not supported by a consideration; that, if the alleged promise of plaintiff, in the conversation with defendant in January, 1918, that he would forbear attaching the beans on defendant's guaranty to pay the note is counted on as the consideration supporting the written guaranty subsequently made, then it is insufficient to support the agreement for the reason that it is "a past consideration"—that is, a consideration without force when given and incapable, therefore, of being carried into the written agreement.

It is the law that a contract of guaranty must be supported by a consideration (Civ. Code, sec. 2792), and must be in writing (Civ. Code, sec. 2793). The provision that the guaranty shall be in writing is in effect a statute of frauds and involves a mere rule of evidence. The fact that contracts which come within the provisions of statutes of frauds are not in writing does not render them *per se* invalid—that is, such contracts orally made are in themselves perfectly valid, but, by reason of the requirement that they shall be reduced to writing, they are not enforceable in a judicial proceeding unless committed to writing. (*In re Balfour & Garrette*, 14 Cal. App. 261, 266, [111 Pac. 615, 618].) The agreement of guaranty by defendant here, as originally or orally made, was supported by the agreement of the plaintiff that he would not put into execution the threat made by him to the defendant that, to satisfy his note, he would levy upon the beans. No one would say that if, at that time, the guaranty had been reduced to writing, it could not have

been enforced in an appropriate action in court as a contract resting upon a valid consideration. Whether the plaintiff could have realized anything on or obtained any benefit from an attachment of the beans is immaterial. He had the right to attempt to secure satisfaction of the debt out of any property not exempt from execution that he might have reason to believe that French owned. The defendant presumably knew this. At any rate, it is very clear that for some reason, evidently satisfactory to himself, the defendant desired that the plaintiff should not complicate matters by levying an attachment on the beans, resulting in litigation which might (as perhaps he believed) diminish his chances for the full satisfaction of his own claim, and, so far as there is anything in this record to show to the contrary, it is equally clear that plaintiff, in agreeing to refrain from attaching the beans, surrendered, or forbore exercising, a legal right. This forbearance upon the part of the plaintiff continued and was, we may presume, intended by defendant to be carried into the written agreement of guaranty as a consideration therefor. If not, why did defendant put the guaranty in writing? But if the reply to this query again be that defendant thus merely intended to agree that he would pay the note only upon the condition that there was money enough realized out of the sale of the beans after his own claim had been satisfied to do so, the answer is that the plaintiff not only had the right to rely, but did rely, upon the agreement as being an unconditional promise to pay in consideration of his surrendering or giving up his right to attach. A party who induces another to give up or forbear exercising a remedial right which, if exercised at the time of promising to forbear might have preserved to him important substantive rights, should not be permitted to escape the consequences of his promise except upon a very clear showing that his promise was not in fact or in legal effect what it appeared to be or the other party understood it to be. We must accept the finding of the trial court here that the transaction was precisely as the plaintiff understood it to be, and that the consideration for the written guaranty was that agreed upon in the previous negotiations of the parties. As we view it, the situation presented here is no different in principle from that presented in the case of *In re Balfour & Garrette, supra.* There one Worley had

been employed by Balfour & Garrette, a corporation, to sell, in tracts of small subdivisions, a large body of land, for which he was to receive as compensation, in addition to a stated monthly salary, certain commissions on each sale. The original agreement of the parties was made in the year 1907 and was oral. In March, 1908, after a few sales had been made by Worley, the corporation, by one of its authorized agents, addressed a letter to Worley, in which the terms of their agreement, as originally and orally made, were expressed. The court, replying to the point made by appellant that the agreement as originally made was not enforceable because it was not committed to writing and that the subsequent writing—that is, the letter—could not be regarded as being referable to the oral agreement, said:

"The foregoing letter clearly defines the terms of the oral agreement previously entered into between the parties. It is definite and certain, and leaves no ground for conjecture as to its meaning or the intention of the parties, or the terms and conditions upon which Worley's employment rested. And we think it is clearly sufficient to satisfy the requirements of the statute, notwithstanding the fact that it was not written until after the execution of the terms of the agreement on Worley's part."

Here, as we have seen, the plaintiff, before and down to the time he received the telegram in question, had carried out his part of the oral agreement—that is, he had refrained from levying an attachment on the beans as he agreed to do upon the promise of defendant that he would guarantee the payment of the note. In a word, the written guaranty here, as in the case of the written agreement in the Balfour & Garrette case, embraces the terms of the oral agreement and presumably the consideration upon which it was made.

There is an obvious dissimilarity between the instant case and the cases cited by the defendant. For instance, in the case of *Chaffee* v. *Browne,* 109 Cal. 211, [41 Pac. 1028], the wife mortgaged her separate property to secure an antecedent individual indebtedness of her husband, no new note or new promise having been made; or, as was said by Mr. Justice Shaw, in *McDonald* v. *Randall,* 139 Cal. 246, 252, [72 Pac. 997], in speaking of the case of *Chaffee* v. *Browne:*

"The mortgage was given by the wife on her separate property a considerable time after the debt had matured,

·and not in consequence of any threat to sue, nor in consideration of any extension of time or other benefit or detriment to either of the parties. The mortgage contained no promise to pay the debt. There was a recital that the mortgagors were jointly and severally indebted to the mortgagee in the sum named, but this was properly held to be nothing more than an acknowledgment of the existence of the pre-existing debt. It is clear that it could not constitute a new promise. The case was nothing more than an application of the familiar principle that where a debt has been already created the entering into an obligation to pay the same by a third person as surety, after the creation of the debt, and without any new consideration, such as delay or extension of time, it is not a binding obligation upon the surety.''

The case of *Lagomarsino* v. *Giannini*, 146 Cal. 545, [80 Pac. 698] and the other cases named by defendant will be found, upon an examination of them, to be altogether different in their facts from this. We will not take the time to review them herein. The question of guaranteeing or becoming a surety on an antecedent obligation of a third party without a sufficient consideration therefor is not in this case, as we think the evidence clearly shows.

Another point suggested by appellant is that, the note having been assigned or indorsed over to the defendant by the plaintiff, the debt evidenced by the note thereupon became the property of the defendant, together with any securities which might have been given for the payment of the note. The proposition here sought to be invoked by counsel is stated in 20 Cyc., page 1423, as follows: ''Where one by assignment or indorsement becomes the owner of a debt, the transfer carries with it as an incident all securities for its payment. A general guaranty, written upon a negotiable promissory note of the payment of it, passes by assignment and delivery of the note, to the holder thereof, although nothing is said touching the guaranty. Where the guaranty of the payment of the note is embodied in an instrument separate from the note, it will pass by delivery of the note without any written assignment.'' A conclusive reply to this proposition is that the record unquestionably shows that plaintiff was at all times, even after the indorsement of the note in suit over to defendant, the owner of said note, or owned the beneficial interest therein. The evi-

dence indisputably shows that the plaintiff never at any time parted with his ownership of the note, the same having been, as seen, assigned to defendant, at the request of the latter, for no other purpose than to enable defendant to recoup against loss from the payment of the note, when he finally had a settlement with French. There is absolutely no dispute upon this proposition. Indeed, the defendant returned the note to the plaintiff after he discovered that he could not realize enough money out of the sale of the beans to satisfy it after reimbursing himself for the moneys he had advanced to French.

The judgment is affirmed.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 19, 1921.

Lawlor, J., Wilbur, J., Lennon, J., Sloane, J., and Shurtleff, J., concurred.