[Civ. No. 7197. Third Dist. Apr. 29, 1946.]

ADELE AYOOB, Appellant, v. OLGA AYOOB, as Administratrix With the Will Annexed, etc., Respondent.

Rowland & Craven, Arthur J. Anderson and M. C. Kerr for Appellant.

S. C. Young, Wm. M. Macmillan and Ronald D. Wolfe for Respondent.

PEEK, J.—By this action Adele Ayoob, plaintiff and appellant herein, seeks to recover upon an alleged oral contract evidenced by a written memorandum executed by her husband, Tom D. Ayoob, now deceased, wherein he agreed that the sum of $5,000 of his estate should be left to her in the event of his death.

Tom D. Ayoob, a native of Syria, had resided in Quincy, California, for a considerable number of years, and had amassed an estate which upon his death was appraised at $89,934.64. He had been married before, and left surviving him seven children, all residents of Quincy, as the issue of the former marriage. Subsequent to the death of his first wife, he made a trip to Lebanon, Syria, and there met Adele Malouf. He returned to the United States and sometime prior to 1939 made another trip to Syria, during the course of which he proposed marriage to Adele. According to her testimony he told her that if she would marry him, leave her family and friends, leave her native country, go to America with him, and care for him for the remainder of his life, he would pay her $5,000 from his estate after his death. She agreed to do all of these things, and on September 6, 1939, at Zahleh, Lebanon, they were married. About eighteen months elapsed after the marriage before arrangements could be made for passports so that Mr. Ayoob could bring his wife to the United States. Shortly after the passports were granted, and approximately a week prior to their leaving Lebanon, Tom Ayoob asked his wife to accompany him to the American Consul at the city of Beirut to have their contract reduced to writing. And on April 26, 1941, decedent, in the presence of the American Consul at Beirut, Syria, signed and acknowledged a writing which reads as follows:

"I, the undersigned, Tom David Ayoob, American citizen . . . of Quincy, California, declare that in the event of my death, the sum of U. S. $5000.— (Five Thousand U. S. Dollars) of my estate should be left to my wife Mrs. Adele Ayoob, nee Adele Malouf, born at Niha Lebanon, on March 15, 1908, to whom I was married on September 6, 1939, at the Greek Orthodox Church of Mar Nicolo at Zahleh, Lebanon."

After the instrument was executed, the Consul handed the paper to appellant, saying "this is yours, keep it."

Shortly thereafter, deceased with appellant returned to Quincy, where they resided as husband and wife until his death on December 17, 1943.

Appellant testified that during December, 1941, the decedent requested that she give him the writing he had executed in Syria, with the remark that his daughter Olga had raised some question as to his will, although he thought the will was satisfactory. On the following day he handed the writing back to her, saying, "You keep it, you want to need it some day." At the same time he told her he had changed the beneficiary in his $5,000 life insurance policy, which was still in the name of his former wife, and made it payable to herself. He also gave her a copy of a will which at the trial was received in evidence as his last will and testament and bears the date December 16, 1941. By said will, decedent left all his property to his children. The only paragraph relating to appellant, and pertinent to the issues herein, is as follows:

"I declare that all property which I now own, wherever situate was acquired before my marriage to my presént wife, Adele Ayoob, and that I have made provision for her, and which is acceptable to her, by naming her as beneficiary in an insurance policy on my life, which insurance policy has been in effect for a great many years, and if such is necessary, I hereby give, devise and bequeath to my said wife, Adele Ayoob, all payments to become due under such policy of insurance, and all accumulations thereof."

After the death of decedent, appellant as beneficiary received from the insurance company the proceeds of said policy, which, with accumulated dividends, amounted to approximately $6,400.

Within the time provided by law appellant filed with respondent as administratrix of the decedent's estate a claim for the payment of the obligation evidenced by the aforesaid writing of April 26, 1941, and upon its rejection filed suit to establish the same and recover the amount thereof. Her complaint alleged among other things the agreement of September 6, 1939, the written instrument or memorandum of April 26, 1941, the performance by herself of the obligations under the agreement, and the refusal of the respondent to approve or allow the claim.

Respondent answered, admitting the formal allegations of the complaint including the solvency of the estate, and also admitted that "Tom D. Ayoob, . . . , died . . . , testate,

without leaving the said sum of $5,000.00 of his estate to the said plaintiff . . . ,'' but denied the averments with regard to the alleged agreement of September 6, 1939, and the writing of April 26, 1941. By way of an affirmative defense, the answer then set up what in legal effect would be a novation, to wit:

''. . . That said deceased and said plaintiff, long prior to the death of said deceased, agreed as follows, to-wit: The said decedent agreed to change the beneficiary in a policy of Life Insurance, in the principal sum of $5,000.00, payable on his death, from his estate to said plaintiff and to keep all of the premiums thereon paid from proceeds from his separate property, the said plaintiff to receive not only said principal sum but all dividends thereafter accruing, and that in addition thereto the said deceased agreed that he would, during his life time, provide the said plaintiff with reasonable support and care, and the said plaintiff thereupon, and in consideration of the said agreement of said deceased, agreed to waive all other claim against the estate of said deceased and all other claim or interest in any of his property; that said deceased, in compliance with said Agreement, changed the beneficiary under his policy of Life Insurance from his said estate to the said plaintiff, and otherwise complied fully with all of the terms of said Agreement on his part, and defendant is informed and believes, and upon such information and belief alleges that plaintiff has since the death of said deceased received from the Insurance Company, by which said policy of insurance was issued, payment thereunder in excess of $6,000.00, as the beneficiary under said policy, because of the death of said deceased.''

Appellant was the only witness to testify with respect to the obligation sued upon. The written evidence consisted of the writing of April 26, 1941, the decedent's will, introduced by appellant by reference, and a copy of the inventory and appraisement of the assets of the estate.

The trial court found that decedent executed the alleged agreement and that he had substantially performed his obligations to appellant. The findings in which this appears are as follows:

''That prior to the marriage of plaintiff and said Tom D. Ayoob the said Tom D. Ayoob was the owner of a life insurance policy in the New York Life Insurance Company, the beneficiary of which said policy being at said time the former

wife of said Tom D. Ayoob who had died several years prior to the marriage of plaintiff and said Tom D. Ayoob; that in compliance with the said instrument executed by the said Tom D. Ayoob on September 6, 1939, the said plaintiff was made the beneficiary of said life insurance and upon the death of said Tom D. Ayoob the plaintiff received and accepted under the terms of said policy the sum of $6400.00, in satisfaction and payment of the agreement hereinabove referred to.

"That the deceased fully performed all of the terms agreed to be performed by him under and by virtue of the said instrument executed by him on September 6, 1939."

It thus appears that the trial court found the existence of the alleged antenuptial agreement of September 6, 1939, characterizing it as a written instrument, perhaps by relation back to the writing of April 26, 1941. The court found further that there had been no breach of the original agreement which was found to have been memorialized, but to the contrary found that there had been a substantial performance thereof. No finding was made on the special defense of novation.

The validity of the contract under the statute of frauds (Civ. Code, § 1624) having been put in issue by the general denial contained in the answer, the first question presented by this appeal, therefore, is whether there is sufficient evidence to support the finding of the trial court to the effect that the parties had on September 6, 1939, entered into a valid agreement, evidenced by a subsequent writing, whereby the deceased undertook that $5,000 of his estate should be left to appellant in the event of his death.

It is well established under the law of this state that an oral agreement within the statute of frauds is not void but voidable. (*O'Brien* v. *O'Brien*, 197 Cal. 577, 588 [241 P. 861]; *Taylor* v. *J. B. Hill Co.*, 67 Cal.App.2d 581, 582 [154 P.2d 926]; *Turell* v. *Anderson*, 16 Cal.App.2d 445, 449 [60 P.2d 906]; *Warder* v. *Hutchison*, 69 Cal.App. 291, 293-296 [231 P.563].) In this respect our codes follow the English statute of frauds, and the language, interpretation and application adopted in most of the states of the Union. (*In re Balfour & Garrette*, 14 Cal.App. 261, 265, 267 [111 P. 615]. See, also, 37 C.J.S. p. 721, § 223.)

Under California law, an oral agreement may be taken out of the operation of the statute by a written memorandum executed subsequently, even though the agreement has already been performed by one party. The rule in this regard is well

stated in 12 California Jurisprudence, page 905, section 69, where it is said that:

"An oral agreement, within the statute of frauds, may be satisfactorily evidenced, by a subsequent writing, notwithstanding the fact that the agreement has already been executed by one party. This would be the rule, even if the statute were viewed as affecting the substantive validity of the contract. The subsequent written contract relates back to the making of the oral agreement which it embodies, so as to validate the latter under the statute of frauds. This is true, whether the written contract be viewed as merely furnishing the requisite evidence of an oral agreement otherwise valid, or as a confirmation and ratification of a previously invalid agreement."

Among the many decisions supporting this principle are: *Etate of Rule*, 25 Cal.2d 1, 12 [152 P.2d 1003] (oral agreement to employ real estate broker); *Coulter* v. *Howard*, 203 Cal. 17, 22-23 [262 P. 751] (employment of real estate broker); *Walsh* v. *Standart*, 174 Cal. 807, 810 [164 P. 795] (contract not to be performed within one year); *Offeman* v. *Robertson-Cole Studios, Inc.*, 80 Cal.App. 1, 13, 19 [251 P. 830] (agreement not to be performed within one year); *Producers Fruit Co.* v. *Goddard*, 75 Cal.App. 737, 757 [243 P. 686] (contract not to be performed within one year); *Kinney* v. *Jos. Herspring & Co.*, 53 Cal.App. 628, 636-638 [200 P. 737] (contract of guaranty); *In re Balfour & Garrette, supra*, p. 265 (employment of real estate agent).

The failure of the writing to make express mention of the precedent oral agreement is not material. It is sufficient if the proof establishes that together they constitute a single contract. Thus, in the case of *Coulter* v. *Howard, supra*, it was held that an oral agreement by an owner of property for the employment of a real estate broker to obtain a purchaser therefor was made valid and enforceable by written escrow instructions thereafter given, although such instructions did not refer to or mention the oral agreement. In so holding, the Supreme Court reversed the judgment of the trial court, on the ground that there was no evidence to support a finding that the alleged contract did not satisfy the statute of frauds. The court, speaking through Mr. Justice Preston, said, at pages 22-23:

"The first question to be answered is: Did the writing signed by defendant directing the escrow party to pay to plaintiff a five per cent commission at the close of the escrow

and out of the funds then due and payable to her, when taken in connection with the facts shown, satisfy the statute of frauds? It must be noted in this connection that a verbal contract of employment was made between defendant and plaintiff. It must also be noted that a written contract executed by the son of defendant was made with plaintiff and under the evidence there is no escape from the conclusion that defendant well knew of its contents and acted pursuant to its terms in signing at the bank and in the presence of a representative of defendant the escrow offer to sell above noted. These escrow provisions followed substantially the terms embodied in the writing executed by defendant's son, written authority in whom she disclaimed. In the light of these facts the provision in the escrow offer must be held to be a 'note or memorandum' of the contract which is all the law requires (Civ. Code, sec. 1624; Code Civ. Proc., sec. 1973).

"We agree fully with the language of *Muir* v. *Kane,* 55 Wash. 131 [19 Ann.Cas. 1180, 26 L.R.A.N.S. 519, 104 P. 153], as follows: 'The moral obligation to pay for services rendered as a broker in selling real estate under an oral contract, where the statute requires such contract to be in writing, is just as binding as is the moral obligation to pay a debt that has become barred by the statute of limitations; and there is no reason for holding that the latter will support a new promise to pay while the former will not. There is no moral delinquency that attaches to an oral contract to sell real property as a broker. This service cannot be recovered for because the statute says the promise must be in writing, not because it is illegal in itself. It was not intended by the statute to impute moral turpitude to such contracts. The statute was intended to prevent frauds and perjuries, and, to accomplish that purpose, it is required that the evidence of the contract be in writing; but it is not conducive to either fraud or perjury to say that the services rendered under the void contract or voluntarily will support a subsequent written promise to pay for such services.' (See, also, *Carrington* v. *Smithers,* 26 Cal.App. 460, 463, 464 [147 P. 225].)

"In this connection the language of *Johnson* v. *Krier,* 59 Cal.App. 330, 332 [210 P. 966], is in point, to wit: 'In the present case the agreement to pay commission was not reduced to writing before the rendition of the services by the plaintiffs, but after plaintiffs had procured the purchasers the oral agreement was ratified in writing and so the bar of the

statute of frauds was removed.' In said cause the defendant had written on the back of the contract of sale and purchase the following words: 'I hereby agree to pay Johnson and Temple a commission of $2,000 for the making of the within sale (dated and signed).' (See, also, Civ. Code, secs. 2310 and 2311.)''

The same language might well be applied to the circumstances found in the present case.

It must be kept in mind that the proceeding herein is one between one of the parties to the contract and the personal representative of the other party, and that the rights of strangers, such as creditors, are not involved. The distinction between this situation and one where a transfer in fraud of creditors, though made pursuant to an antecedent agreement, has been held to be absolutely void, is emphasized in certain decisions, such as *Sudbrock* v. *Kroener,* 136 Cal.App. 624 [29 P.2d 435], and *Hughes* v. *Hughes,* 49 Cal.App. 206 [193 P. 144], cited by respondent and relied upon as authority for the contention that the alleged contract is void and unenforceable under sections 178 and 1624 of the Civil Code, and section 1973 of the Code of Civil Procedure.

In *Sudbrock* v. *Kroener,* during the pendency of proceedings between a debtor and his creditor, the debtor married and, pursuant to an alleged oral antenuptial agreement, transferred all of his property to his wife, leaving himself insolvent. The creditor secured a judgment and caused execution to be levied on a certificate of deposit, a portion of the property which had been placed in the wife's name. There was no written "note or memorandum" subscribed "by the party to be charged." The question presented was whether or not the transfer of property by the husband to the wife subsequent to their marriage but prior to the levy by the sheriff was such a performance of an oral antenuptial agreement as to relieve it from the operation of the statute of frauds and the provisions of former section 3442 of the Civil Code, since repealed (see Stats. 1939, p. 1667). The reviewing court held that the transfer of the property was void under the provisions of said section 3442, which in part then read:

". . . That any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors."

Following the general rule the court cited and relied on the

note in 41 American Law Reports, page 1169, wherein it is said: "The view accepted by all the courts, it seems, is that a postnuptial settlement made in pursuance of an oral antenuptial agreement is not binding upon existing creditors of the grantor, since it is, as to them, a fraudulent conveyance." The court in said case then concluded: "Where a statute declares an oral antenuptial agreement void, it canont be validated by a postnuptial contract," and cited decisions from other jurisdictions where the statute specifically made such an agreement void, which, as we have previously noted, is not the case in this state where oral antenuptial contracts are held to be voidable only.

In addition, in reaching its conclusion the court applied the principle frequently enunciated in this state to the effect that marriage alone does not constitute such part performance of an oral antenuptial agreement as to take it out of the statute of frauds (*Peek* v. *Peek,* 77 Cal. 106 [19 P. 227, 11 Am.St.Rep. 244, 1 L.R.A. 185]); and, since there was no enforceable valid agreement, the transfer of the property involved was purely voluntary and in fraud of creditors.

It also should be noted that, unlike the present case, in none of the California cases relied upon by the court in the Sudbrock case was there a written contract or a note or memorandum subscribed by the party to be charged.

In the other case cited by respondent on this point, namely, *Hughes* v. *Hughes, supra,* the question of the validity of an oral antenuptial agreement arose out of an order sustaining a demurrer to a complaint by the wife for specific performance of such an agreement. It was not alleged that there was any note or memorandum in writing signed by the defendant, although the complaint charged that among the various promises made by the defendant was one to execute a will in her favor, and it was further shown that such a will had been executed, it being alleged that this was the only promise the defendant had performed. The appellate court held that the mere making of the will did not take the contract out of the statute of frauds, and further the provisions in the will did not evidence a performance on the part of the plaintiff, who in the case of an oral agreement would have to show something more than marriage to remove the agreement from the operation of the statute.

Respondent contends further that the agreement is otherwise invalid as being contrary to public policy, in that

the consideration therefor was the performance of services which appellant was required by law to perform, and the fact that the promise to marry was a part of the consideration could not save it from its inherent vice.

This is not the position which respondent took in the trial court. No demurrer was interposed to the complaint, nor at the trial was objection made on this ground to the introduction of evidence of the oral agreement. When counsel for respondent on cross-examination asked, "Mrs. Ayoob, why did you marry Mr. Ayoob and come to America?" and, "was the promise to pay or to leave five thousand dollars out of Mr. Ayoob's estate the reason for your coming to America?" and objections thereto were sustained, counsel, in the course of his argument on the ruling, said, "If Your Honor please, they [plaintiff and her counsel] have alleged that was the consideration. We are not saying it was an invalid consideration but we are trying to find out if that was the consideration." It thus appears that the earlier objection to the admission of evidence of said agreement on the ground that it was incompetent, irrelevant and immaterial was based on the statute of frauds and not on illegality of consideration.

Furthermore, in asserting and maintaining the existence of a novation, respondent has confirmed the validity of the original agreement which the alleged novation is declared to have superseded. As the author says in 20 California Jurisprudence, page 249, section 4: "Where it is claimed that there has been substituted a new obligation which changes the rights and relation of the parties, such claim of novation presupposes a previous valid obligation."

Nor may we say that the agreement shows on its face such a violation of public policy as to cause this court of its own motion to declare it invalid.

It must be borne in mind that a promise to marry is an adequate and valuable consideration for a subsequent transfer of property by the promisee. (13 Cal.Jur. pp. 809-810, § 17; 41 C.J.S. p. 561, § 88; *Conner* v. *Stanley*, 65 Cal. 183, 185-186 [3 P. 668]; *Marvin* v. *Marvin*, 46 Cal.App.2d 551, 558 [116 P.2d 151].)

The fact that appellant, in the belief that they constituted further consideration, recited in addition certain promises given by her in the course of the making of the asserted antenuptial agreement, such as leaving her home and friends and accompanying decedent to America and caring for him

and his home and family, is immaterial. These were vows which she might have put into words at the altar, or before a justice of the peace or other functionary authorized to solemnize a marriage, and which were implicit in her engagement to marry. Surely she should not be penalized for expressing them elsewhere.

In a somewhat comparable case, the Supreme Court of this state has stated that:

"The consideration for the transfer was the promise of the respondent to marry the plaintiff, which promise she kept. The averment that she promised to live with him during their joint lives is of no consequence; it was included in the marriage contract itself, and its separate averment has no significance." (*Barnes* v. *Barnes,* 110 Cal. 418, 421 [42 P. 904].)

To the same effect is the case of *Estate of Warner,* 158 Cal. 441, 443, 445-446 [111 P. 352], where it appears that the husband in his antenuptial agreement had agreed to care for, keep, maintain, and support the respondent and her son when she should become his wife; yet the Supreme Court was apparently not moved of its own motion to declare the agreement void because such a provision accompanied the operative portions thereof.

The case of *Estate of Sonnicksen,* 23 Cal.App.2d 475, 479 [73 P.2d 643], cited by respondent, is inapplicable to the situation found in the present case because there the agreement was not made in contemplation of marriage.

Equally inapplicable is *Brooks* v. *Brooks,* 48 Cal.App.2d 347, 351 [119 P.2d 970]. That decision arose from an order of the trial court sustaining a demurrer without leave to amend; and, because of the situation presented by the pleading, the reviewing court determined that the parties had treated their marriage as merely incidental to the rendition by the wife of services as a nurse and the payment therefor of a monthly stipend by the husband, and held the agreement invalid as one squarely within the prohibition of section 159 of the Civil Code.

Respondent herein by her answer did not plead a performance by herself or by the decedent of the said contract, but on the contrary specifically admitted that the decedent died testate "without leaving said sum of $5,000.00 of his estate to the said plaintiff," at the same time denying generally the averments of the complaint relative to a breach of the alleged agreement and appellant's performance of her obligations thereunder. These allegations of the answer were followed by

the paragraph previously set forth, which as it has been held presupposes the existence and validity of the original contract, and then alleges the making of a new agreement involving a change of the beneficiary in the decedent's life insurance policy and the acceptance thereof by plaintiff. In other words, no issue was raised by the pleading to the effect that the contract on which this suit is brought had been performed. The only issues joined were, (1) the fact of the execution of a contract valid under the statute of frauds, and (2) an excuse for failing to perform the alleged contract because it was superseded by another agreement which has been performed.

However, performance of a contract and an excuse for nonperformance are two different things. (*Estate of Warner, supra,* at p. 445.) In order for a defendant to prove performance he must plead it specially. (6 Cal. Jur. 486 § 287.) The respondent herein has failed to do so. Even if we should interpret the averments of the answer in the light of the proof, it still is apparent that the act of the deceased in naming appellant as the beneficiary of his life insurance policy which otherwise would have been payable to his estate was not a performance of the alleged antenuptial agreement. By this act, he prevented the proceeds from becoming assets of his estate, from which, according to the agreement, appellant was to be paid. (11A Cal.Jur. p. 449, § 324; *Heydenfeldt v. Jacobs,* 107 Cal. 373, 377 [40 P. 492].) And the answer and proof conclusively show that appellant did not in fact receive any part of the assets of the decedent's estate, but did receive payment of the obligation of an insurance company under a contract made for the benefit of appellant as a third party.

 It follows that the finding of the trial court to the effect that the obligation sued on has been performed is outside the issues made by the pleading and the proof, and cannot support the judgment. As the court stated in *Estate of Warner, supra,* at page 445:

"If, as is thus held, a party relying upon an excuse for non-performance must allege his excuse in order to have a basis for proof, it necessarily follows that evidence of such excuse will not support a finding that he has performed. In the case before us the evidence concerning the appellant's waiver of the obligation to support and educate her child was sharply conflicting. On this issue the court has not found, and we cannot, of course, supply a finding. The finding of performance, which was made, would have sustained the judg-

ment, but since this finding is contrary to the evidence there must be a new trial."

This brings us to the third and last issue presented by the appeal—that of novation. Respondent pleaded novation affirmatively, and her plea was denied by operation of law. And while the trial court made no finding on this issue, if we should find in the record sufficient evidence of such an agreement, and of the discharge of the obligations thereunder, we could supply the necessary finding (Code Civ. Proc., § 956a). However such is not the case.

In the determination of this question, cognizance must be taken of the well established rule that the burden of proving a novation is on the party asserting its existence (*Colley* v. *Chowchilla Nat. Bank,* 200 Cal. 760, 770 [255 P. 188, 52 A.L.R. 569]; 46 C.J., pp. 625-626, § 72), and that the proof in support thereof must be clear and convincing. (*Columbia Casualty Co.* v. *Lewis,* 14 Cal.App.2d 64, 72 [57 P.2d 1010].)

The only evidence herein to which respondent can point as having a tendency to show a novation is the language of the provision of the will above set out, and more particularly the clause "and which is acceptable to her." This clause, however, is nothing more than a self-serving declaration, opinion or conclusion; and while it might be competent to show the intent of the testator if that were material (*Whitlow* v. *Durst,* 20 Cal.2d 523, 524 [127 P.2d 530]), it is without sufficient probative value under the circumstances of the present case to establish the intent of the appellant (*Hartman* v. *Rogers,* 69 Cal. 643, 646 [11 P. 581]) or the truth of a fact declared (*Chamberland* v. *Whitney,* 19 Cal.App.2d 660, 665-666 [66 P.2d 220]; *Citizens Nat. Tr. & Sav. Bk.* v. *Arrowhead S. Beverage Co.,* 126 Cal.App. 550, 556 [14 P.2d 821]; *Estate of Snowball,* 157 Cal. 301, 308 [107 P. 598]), and it is in direct contradiction of the terms of the written memorandum of April 26, 1941 (*Crowley* v. *Savings Union Bank,* 30 Cal.App. 144, 154 [157 P. 516]). Said declaration contained in said will makes no reference to the contract in question nor characterizes it as a part of the res gestae (see *Barcroft* v. *Livacich,* 35 Cal.App.2d 710, 718 [96 P.2d 951]; 32 C.J.S. p. 44, § 416); and the circumstance that it was received in evidence as a part of an admissible document does not give it added value (*Bohn* v. *Gruver,* 111 Cal.App. 386, 395 [295 P. 891]) nor relieve it of its intrinsic infirmity. (See 32 C.J.S.

p. 1077, § 1034; 64 C.J., p. 230, § 242; *Hutchings* v. *Castle,* 48 Cal. 152, 156; *Estate of Holt,* 61 Cal.App. 464, 469-470 [215 P. 124]; *O'Brien* v. *Biegger,* 233 Iowa 1179 [11 N.W. 2d 412, 425].)

The case of *Whitlow* v. *Durst, supra,* relied upon by respondent, involved conflicting claims to the proceeds of two life insurance policies. The executrix of the insured claimed by virtue of a transfer by the deceased's wife under a property settlement agreement, made at the time the spouses were separated, and a bequest in the will of the decedent leaving said proceeds to the executrix in trust for another. The widow claimed by virtue of an alleged revocation of said property settlement agreement, asserted to have taken place upon the reconciliation of the parties. On appeal, error was sought to be predicated on the action of the trial court in admitting in evidence testimony that shortly after the alleged reconciliation decedent declared that he and his wife were still separated and would never be reconciled. In affirming the ruling of the court below, the Supreme Court stated that as an exception to the hearsay rule the declarations of a decedent are admissible in evidence to show his intent, where that intent is a material element of a disputed fact.

In the present case, it is the intent of appellant and not of the decedent that would be controlling. The fact that decedent may have intended to make the inchoate right to the insurance proceeds a substitute for the binding obligation of the written promise would be ineffectual to change the legal result of the original transaction; and the declaration contained in his will would therefore come squarely within the rule that "Such declarations are admissible if, and not unless, the existence of the particular mental state at the time to which the declarations relate is a relevant fact; and are to be excluded where the intent does not affect the legal result of the transaction." (31 C.J.S., pp. 1007-1008, § 256.)

 Novation is a bilateral (or multilateral) contract requiring the mutual assent of all the parties (Civ. Code, § 1530; 20 Cal.Jur., p. 249, § 4); and obviously, as between obligor and obligee, it is the intent of the latter that is controlling on the question of waiver or release of the obligation under the original agreement.

 Therefore, even if the decedent had intended his original obligation to be superseded by the new acts and promises, such acts or promises would not have been sufficient in

law to constitute a novation, since they were only illusory in character and did not amount to an executed consideration. (*Blumer* v. *Madden,* 128 Cal.App. 22, 24-25 [16 P.2d 319].) The act of the decedent in changing the name of the beneficiary of the insurance policy and his act in inserting in the will provisions relative thereto, were revocable and entirely without binding effect. Section 1698 of the Civil Code provides that a contract in writing may be altered only by a contract in writing, or by an executed oral agreement, and not otherwise. The very finding of the trial court that "upon the death of said Tom D. Ayoob the plaintiff received and accepted under the terms of said policy the sum of $6,400.00, in satisfaction and payment of the agreement hereinabove referred to," demonstrates that whatever new agreement the parties may have entered into could have been consummated in a binding manner only after the death of the testator.

Opposed to respondent's contention that a novation was entered into by virtue of the quoted portion of the will, is appellant's testimony to the effect that, when the insurance policy and the will were discussed between them, nothing was said by either the decedent or herself to indicate that making her the beneficiary of the policy would constitute a satisfaction of the original promise, but on the contrary, she twice stated, the deceased had told her that upon his death she would receive $10,000, $5,000 on the "paper" and $5,000 on the "insurance." Moreover, the very circumstance that appellant was not required to surrender the instrument but retained it in her possession at decedent's suggestion corroborates her testimony and is evidence against the existence of a novation and in favor of the subsistence of the original agreement.

If this was the extent of the acceptance to which the decedent referred in his will, then said language of the will would have constituted nothing more than an attempt to vary by parol the written instrument in question, and it would have been entitled to no consideration whatsoever. (*Dollar* v. *International Banking Corp.,* 13 Cal.App. 331, 343 [109 P. 499].)

Respondent's contention, apparently raised for the first time in the oral argument, in support of the judgment, to the effect that in any event the evidence shows an accord and satisfaction, is likewise without persuasive force. In the first place, the alleged new agreement would not come within the ordinary concept of an accord and satisfaction, which generally applies only to a case where a right of action has already

accrued. (*B. & W. Engineering Co.* v. *Beam,* 23 Cal.App. 164, 170 [137 P. 624].) In the second place, the deficiency of proof of a novation would likewise result in a failure to establish the existence of an accord and satisfaction, since the essential elements of a contract must be present in either case. (Civ. Code, §§ 1521-1523, 1530-1533. And see, *Hallensleben* v. *Heine Piano Co.,* 54 Cal.App. 295, 298 [201 P. 942]; *Sierra etc. Power Co.* v. *Universal Elec. & Gas Co.,* 197 Cal. 376, 387 [241 P. 76].)

The want of sufficient evidence to sustain findings in favor of respondent on the issues herein raised under any tenable theory is emphasized by an examination of the written opinion of the trial court. It appears therefrom that the court was of the opinion that "In Mr. Ayoob's Will, . . . a statement was contained that by making plaintiff the beneficiary of said policy that he had complied with the terms of the agreement and therefore was not making the bequest to her." From this recital, the court apparently concluded that the respondent had made a prima facie case of substantial performance which could be overcome by appellant only by a showing by her of some other agreement. Specifically the court said: "Unless some other agreement was made, it is apparent that Mr. Ayoob had fully performed the terms of his agreement with plaintiff and that plaintiff had received more than the five thousand dollars to which she would be entitled under the agreement." Then, in evident disbelief of the appellant's testimony to the effect that no novation had been entered into, and while conceding that the statement contained in the will was not binding on appellant, the court nevertheless concluded that said statement could be considered in connection with "all of the other circumstances appearing," and that, taking "all of the circumstances which appear in evidence," he was satisfied that even though any oral agreement made by Mr. Ayoob would be inadmissible in evidence to vary the terms of the written contract, yet "the evidence greatly preponderates against plaintiff's contention"; and determined that plaintiff was not entitled to recover anything by reason of her action.

However, it is to be noted that the will did not contain in express language the statement attributed to it by the court, and it is further to be observed that a prima facie case of substantial performance which such a statement might otherwise have been thought to establish was entirely outside the

issues. Likewise, in our view, the record fails to disclose any of those "other circumstances" to which the court referred generally as causing the evidence to preponderate against appellant's contention, if indeed such contention was material.

Finally, if the oral evidence to vary the terms of the written contract was either inadmissible or weak, as the court intimated, this would militate against the respondent's assertion of the existence of a novation and not against appellant's denial thereof. In other words, from the language of the will the court did not draw an inference that the parties had entered into a new agreement superseding the original one, but rather that the original agreement had been satisfied. And since the court apparently did not find evidence of the alleged novation, and since we likewise fail to discover in the record the existence of such evidence, the judgment, therefore, is without support. "While it is true that a novation may be established by implication, nevertheless 'such implication cannot arise until there is evidence showing facts and circumstances from which it may reasonably be inferred that such was the intention.' " (*Colley* v. *Chowchilla Nat. Bank, supra.*)

Finally, it may be observed in support of appellant's position herein, there is a presumption which obtains between husband and wife—differing from that between strangers—that a transfer of property from the husband to the wife is to be deemed to be made by way of gift rather than in payment of a debt. (Note, 71 A.L.R., p. 1025; *Hamby* v. *Brooks,* 86 Ark. 448 [111 S.W. 277, 278].) The inchoate transfer which the decedent made to appellant by making her the beneficiary of his life insurance policy, and which he permitted to ripen into an executed transaction satisfied by the payment of the proceeds thereof by the insurance company to appellant, must be deemed to be a gift and not the discharge of the obligation which the deceased owed to appellant, in the absence of a showing to the contrary.

The judgment is reversed.

Adams, P. J., and Thompson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 27, 1946. Schauer, J., and Spence, J., voted for a hearing.